### THE STATE *v.* DAVID RAWLES and others.

If a person be at a place where he has a right to be, and four other persons having in their possession a manure fork, a hoe and a gun, by following him and by threatening and insulting language, put him in fear and induce him to go home sooner than, or by a different way from, what he would otherwise have gone, are guilty of an assault upon him, though they do not get nearer to him than seventy-five yards, and do not level the gun at him.

When a number of persons meet together, and there is evidence tending to show a common design to commit an assault upon another, they may all be properly found guilty, though only one of them used threatening and insulting language to him.

Where a number of persons were charged with having met together and then gone to commit an assault upon another person, and it was proved on the part of the State, that one of the number had just had a conversation with him, *it was held,* that the defendants had a right to prove the details of the conversation as a part of the *res gestæ* to prove the *quo animo* of their coming together.

The cases of the *State* v. *Church,* 63 N. C. Rep. 16, and *State* v. *Worthington,* 64 N. C. Rep. 594, cited and approved.

This was an indictment, in which the defendants, a father and three sons, were charged in three counts with, first an affray, secondly a riot, and thirdly an assault upon one Charles Odom.

On the trial before *Pool, Judge,* at the last term of the Superior Court for the County of HERTFORD, the prosecutor testified that early in the morning in January, 1869, he was on the public road, engaged in putting up his fence, which had been knocked down; that he there saw the defendant, Braxton Rawles, who was going in the direction of the house of his father, David Rawles, which was about half a mile distant. He said that he had a conversation with Braxton Rawles, and was about to tell what it was, when he was stopped by the Solicitor for the State, who objected to his stating it.

The witness then went on to state that, after the conver-

sation had ended, he and Braxton Rawles parted, each going towards his own home; that he, the witness, had proceeded down the road about forty or fifty yards, when he looked back and saw, about two hundred and fifty yards behind him, the defendants David Rawles, John Rawles and Jesse T. Rawles, the first with a manure fork, the second with a weeding hoe, and the third with a gun on his shoulder, all coming down the road towards him; that as soon as he saw this, he hastened his gait towards home, the said parties following him; that the defendant, Braxton Rawles, joined them, and they all continued to follow him, David making use of insulting and threatening language, the exact words of which the witness could not distinctly hear. The witness continued going down the road until he came to a path leading to his house, by the house of a Mr. Powell; that the defendants at one time were about seventy-five or a hundred yards from him, when David Rowles halloed to him, and told him to come back and let him whip him, and called upon the other defendants to set the dogs upon him. This, however, they did not do, nor did the witness see any dogs, nor did either of them take the instrument he had from his shoulder, nor was the gun leveled at him; nor was any abusive or threatening language used by any one of them, except David. Witness said " he was put in fear and made to hasten home by the language and conduct of the said David Rawles."

Upon the cross examination of this witness he was asked to state the particulars of the conversation between himself and the defendant, Braxton Rawles, when they met at the broken fence, but this was objected to by the Solicitor, and was ruled out by the Court.

His Honor, after directing the jury to confine their attention to the count in the indictment for an assault, told them that " if parties use such insulting and threatening language to another as is calculated to intimidate him, and he is

thereby put in fear and caused to deviate from the course he was pursuing, they are guilty of an assault, and that if they were satisfied that the defendants assembled themselves together with a common design, they were all equally guilty."

Under this charge the defendants were all found guilty, and after an ineffectual motion for a new trial, appealed from the judgment which was rendered against them.

*R. B. Peebles* for the defendants.
*Attorney General* for the State.

SETTLE, J.   The prosecutor while in the public road engaged in putting up his fence meets with Braxton Rawles, one of the defendants, with whom there is some conversation in relation to knocking down the fence. They separate, and in a few moments David Rawles with his three other sons are seen coming down the road towards the prosecutor, when they meet Braxton, he returns with them, David, the father, using threatening and insulting language. When they get within seventy-five or one hundred yards of the prosecutor, David Rawles calls to him and says, " come back here and let me whip you," and he tells the other defendants to set the dogs on him. No dogs are seen. One of David Rawles' sons has a manure fork, another a hoe, and a third a gun, but neither the fork, hoe or gun are taken from the shoulder of the bearer.

The prosecutor swears that he was put in fear and made to hasten home by the language and conduct of the defendants.

His Honor instructed the jury that " if parties use such insulting and threatening language to another as is calculated to intimidate him and is thereby put in fear and caused to deviate from the course he was pursuing they are guilty of an assault; and if they were satisfied that the defendants

assembled themselves together with a common design, they were all equally guilty."

Without the conversation which took place between the prosecutor and Braxton Rawles when they first met, which would doubtless have thrown much light upon the whole transaction, the defendants are left in the position of advancing upon the prosecutor under such circumstances as were well calculated to put a man of ordinary firmness in fear. They were five in number, a father and four sons, the language of the father was insulting and threatening, and they had in their possession at least one weapon with which they could have inflicted a mortal wound at the distance to which they approached the prosecutor. An assault is defined to be an offer or attempt to strike the person of another. Here was certainly an offer to strike, not made in one moment and abandoned the next, but pressed upon the prosecutor over a distance of two hundred and fifty yards, and the assault was only prevented from becoming a battery by the agility of the prosecutor.

The prosecutor was where he had a right to be, and just been engaged in repairing his fences, which some one had knocked down, and no one had the right by numbers, manner, language, weapons or otherwise to drive him home by a different path or at a different pace than that which he chose to take.

What was the prosecutor to do ; was he to stand still and submit to a battery ? Can the defendants stand in a more favorable light before a Court of justice merely because their violence was not fully consummated, in consequence of the flight of the prosecutor ? Some stress seems to be laid upon the fact that the gun and other weapons were not taken from the shoulders of those carrying them.

As is said in *State* v. *Church*, 63 N. C. 16, that makes no difference, for " that would have been but the work of a mo-

22

ment, and was not needed to put the prosecutor in fear and to interfere with his personal liberty."

As has often been said, the rules of law in respect to assaults are plain, but their application is sometimes difficult. Each case must depend upon its own peculiar circumstances.

It was contended at bar that as David Rawles alone used insulting and threatening language, there was no evidence tending to criminate his sons. The fact that three of them came with their father and that their brother Braxton joined them when they met and returned towards the prosecutor, was evidence which made it proper for his Honor to submit the whole matter to the jury. In this respect we see no objection to the charge of his Honor, or to the finding of the jury. But we are constrained to grant the defendants a new trial upon the ground that his Honor excluded the conversation which occurred between Braxton Rawles and the prosecutor just preceding the assault. The State introduced the fact that the prosecutor and Braxton Rawles met at the broken fence. For some purpose the prosecution choose to commence the campaign at that point, and to introduce that fact. The general rule that one charged with a crime shall not be allowed to offer what was said in reply in evidence, (because that would be manufacturing testimony for himself) does not apply here, for the crime with which the defendant is now charged had not then been committed, and the conversation, as far as we can see from the record, was about another matter, to-wit: the broken fence, and was therefore competent as showing the *quo animo*, and giving character to that meeting.

It was as much a part of the *res gestæ* as the fact itself that they met at the broken fence. The *res gestæ* includes what was said as well as what was done. *State* v. *Worthington*, 64 N. C. 594. It does not clearly appear to us how either the fact of their meeting or their conversation was

material; but the State having introduced part, must take the whole of the *res gestæ*.

There must be a *venire de novo*.

Let this be certified, &c.

PER CURIAM.                                              *Venire de novo.*