## STATE *v.* ALEXANDER NEELY.

In an indictment for "Assault and Battery with *intent* to commit a Rape," the evidence of such intent being substantially the following: That very soon after the prosecutrix left the railroad, (and her companion,) she heard the prisoner, a colored man, "ho'ler" to her "to stop," and saw him running after her, distant about seventy yards. The prosecutrix then began to run "as hard as she could," and was pursued rapidly by the prisoner, who "hollered" three times to her "to stop." The prisoner was approaching her, until the road emerged from the woods into a lane; when he reached the mouth of the lane, and saw the dwelling house of her brother-in-law, he fled in the direction of the road and into the woods, &c.: *Held,* (by a majority of the court,) that this was evidence of the intent charged, proper to be left to the jury, and that the prisoner was not entitled to a new trial, because the same had been submitted to the jury under the charge of the court.

(*State* v. *Davis,* 1 Ired. 125; *State* v. *Ruols,* 65 N. C. Rep. 334; *State* v. *Vannoy,* Ibid, 532 cited and approved.)

RODMAN and BYNUM, J. J , *dissenting.*

INDICTMENT, for an assault with intent to commit a rape, tried before *Schenck. J.* and a jury, at Fall Term, 1875, of the Superior Court of CABARRUS county.

It was in evidence that on the 10th July, 1875, the prosecutrix, a woman over ten years of age, and a young girl were returning home, along the track of the North Carolina Railroad, a few miles from Concord. When they reached a point on the railroad at which a country road crossed the same, the prosecutrix and the girl separated. The road taken by the prosecutrix lead through a woods about a quarter of a mile, to the house of her brother-in-law, with whom she then resided. Very soon after she left the railroad, she heard the prisoner, a colored man, "holler" to her "to stop," and saw him running after her, distant about seventy yards. The prosecutrix then began to run "as hard as she could," and was pursued rapidly by the prisoner, who "hollered" three times to her to

" stop." The prisoner was approaching her, until the road emerged from the woods into a lane. When the prisoner reached the " mouth of the lane," and saw the dwelling house of the brother-in-law of the prosecutrix nearby, he fled in the direction of the railroad and into the woods." He was pursued and taken shortly afterwards at a section house. The prosecutrix was put in great fear by the chase.

The record sent to this court upon appeal says: "There was other evidence bearing on the intent with which he pursued the prosecutrix, which it is not necessary to set forth in detail."

The court charged the jury : That this was a very serious charge against the prisoner, and it was the duty of the State to prove all the essential facts constituting it, beyond a reasonable doubt, and that if they had reasonable doubt, they must acquit." As to the assault, the court charged : That if the prisoner pursued the prosecutrix against her will, with the intent violently to take hold of her person, and caused her to flee, and then continued to pursue her, that this would be an assault, and that if they found that the prisoner committed such an assault with the intent carnally to know the person of the prosecutrix violently and against her will, he would be guilty, and they must so find; otherwise they would acquit."

To this charge the prisoner excepted.

The jury rendered a verdict of guilty, whereupon the prisoners moved the court for a new trial. Motion overruled. Sentence pronounced, and the prisoner appealed.

*Shipp & Bailey.* for the prisoner.
*Attorney General Hargrove,* for the State.

PEARSON C. J. That the prisoner upon the facts set out in the statement of the case, committed an assault is not an open question. *State* v. *Davis,* 1 Ired. 125 ; *State* v. *Rawls,* 65 N. C. Rep. 334 ; *State* v. *Vannoy,* Ibid 532.

This it would seem was the only point relied on by the counsel of the prisoner in the court below. We are led to the inference, that the points as to there being no evidence of the intent to commit a rape, was not taken in the court below, by the fact that in stating the case his Honor assumes that the intent charged was fully proved and given up on the trial, and contents himself with setting out " there was other testimony bearing on the intent with which he pursued the prosecutrix, which it is not necessary to set forth in detail." Clearly had the point been made, that there was *no evidence* fit to be left to the jury as to the intent charged in the indictment, his Honor would have seen that it was necessary to set forth in detail the other testimony, " bearing on the intent with which he pursued the prosecutrix." However this may be, giving the prisoner the benefit of the rule " what does not appear does not exist," and relieving him from the rule " the appellant must show error and intendments are to be taken against him," we will consider the case as presenting the question : Do the facts and circumstances set out amount to any evidence fit to be left to the jury as to the intent charged ? Or was the matter of intent left so much in the dark as to make it the duty of the Judge to have instructed the jury to have acquitted the prisoner of the criminal intent charged ?

A majority of the court are of the opinion that there was evidence to be left to the jury as to the intent charged. For my own part I think the evidence plenary, and had I been on the jury would not have hesitated one moment.

I see a chicken cock drop his wings and take after a hen ; my experience and observation assure me that his purpose is sexual intercourse, no other evidence is needed.

Whether the cock supposes that the hen is running by female instinct to increase the estimate of her favor and excite passion, or whether the cock intends to carry his purpose by force and against her will, is a question about which there may be some doubt, as for instance if she is a setting hen and

"makes fight" not merely amorous resistance. There may be evidence from experience and observation of the nature of the animals and of male and female instincts, fit to be left to the jury, upon all of the circumstances and surroundings of the case, was the pursuit made with the expectation that he would be gratified voluntarily, or was it made with the intent to have his will against her will and by force? Upon this case of the cock and the hen, can any one seriously insist that a jury has no right to call to their assistance their own experience and observation of the nature of animals and of male and female *instincts*.

Again; I see a dog in hot pursuit of a rabbit; my experience and observation assure me the intent of the dog is to kill the rabbit; no doubt about it, and yet according to the argument of the prisoners counsel, there is no evidence of the intent.

In our case, when the woman leaves the railroad and starts for her home and is unaccompanied, to pass through woodland for one-fourth of a mile, a Negro man calls to her stop; he is at the distance of seventy-five yards; she with female instinct, from the tone of his voice, looks, &c., sees his purpose and runs as fast as she can through the woodland and makes the head of the lane, in sight of the house before he is able to catch her; he pursues to the head of the lane, and then flees and attempts to escape in the woods.

It is said in the ingenious argument of the counsel of the prisoner, his intent may have been to kill the woman, or to rob her of her shawl or of her money, and if the jury cannot decide for which of these intents he pursued her, they ought to find a verdict for the defendant. The fallacy of this argument is, I conceive, in this: it excludes all of the knowledge which we acquire from experience and observation as to the nature of man. This is the corner stone on which the institution of trial by jury rests. To say that a jury are not at liberty to refer to their observation and experience, when a

negro man under the circumstances of this case pursues a white woman, starting at, say seventy-five yards and gaining on her and being near when she gets in sights of the house, when he stops and flees into the woods, is, as it seems to me, to take from a trial by jury all of its recommendations.

Our case particularly called for the observation and experience of the jurors as practical men. The prisoner had some intent when he pursued the woman. There is no evidence tending to show that his intent was to kill her or to rob her, so the intent must have been to have sexual intercourse, and the jury considering that he was a negro, and considering the hasty flight of the woman, and the prisoner stopping and running into the woods when he got in sight of the house, and the instinct of nature as between male and female, and the repugnance of a white woman to the embraces of a negro, had some evidence to find that the intent was to commit a rape.

RODMAN, J., *dissenting*. I cannot concur in the opinion of the majority of the court, and will state the reasons for my dissent with as much brevity as is consistent with clearness.

Upon the authority of *State* v. *Rawls*, I admit there was evidence on which the jury might convict the prisoner of a simple assault.

But in my opinion the record sets forth no evidence fit to go to the jury, or upon which they could reasonably find the prisoner guilty with the intent charged. The intent was an essential ingredient of the offence charged and there was no evidence of it.

In the opinion of the court as delivered by the Chief Justice, the argument is, that because from certain actions of certain brute animals, a certain intent would be inferred, a like intent must be inferred against the prisoner from like acts.

It seems to me that the illustrations are not in point, even if that method of reasoning be allowable at all. The chicken

cock in the case supposed has no intent of violence. He expects acquiesence and knows he could not succeed without it, and besides, he is dealing with his lawful wife.

But the method of reasoning is misleading and objectionable on principle. It assumes that the prisoner is a brute, or so like a brute that it is safe to reason from the one to the other; that he is governed by brutish, and in his case, vicious passions unrestrained by reason or a moral sense. This assumption is unreasonable and unjust. The prisoner is a man, and until conviction at least, he must be presumed to have the passions of a man, and also the reason and moral sense of a man, to act as a restraint on their unlawful gratification. Otherwise he would be *non compos mentis*, and not amenable to law. He is entitled to be tried as a man, and to have his acts and intents inquired into and decided upon, by the principles which govern human conduct, and not brutish conduct. Assume as the opinion of the court does, that the inquiry as to his intent is to be conducted upon an analogy from the intents of brutes, you treat him worse than a brute, because what would not be vicious or criminal in a brute, is vicious and criminal in him, being a man. When you assume him to be a brute, you assume him to be one of vicious properties. If that be true, what need of court and jury? The prisoner is not only *feræ naturæ* but *caput lupinam* whom any one may destroy without legal ceremony.

The evidence of the prisoner's intent is circumstantial; the circumstances being the pursuit, and its abandonment when he got in sight of White's house. It is the admitted rule in such cases that if there be any reasonable hypothesis upon which the circumstances are consistent with the prisoner's innocence the Judge should direct an acquittal, for in such cases there is no positive proof of guilt. The particular criminal intent charged must be proved. It will not do to prove that the prisoner had that intent or some other although the other may have been criminal; and especially if the other, although

immoral was not criminal. In *Rex* v. *Loyd*, 7 Car. P. 318, (32 E. C. L. R.) it was held by *Patterson, J.*, that in order to convict of assault with intent to commit a rape, the jury must be satisfied, not only that the prisoner intended to gratify his passions on the prosecutrix, but that he intended to do so at all events and notwithstanding any resistance on her part. Roscoe Cr. Ev., 811. It is not proof of guilt, merely, that the facts are consistent with guilt, they must be inconsistent with innocence. It is neither charity, nor common sens) nor law, to infer the worst intent which the facts will admit of. The reverse is the rule of justice and law. If the facts will reasonably admit the inference of an intent, which though immoral is not criminal, we are bound to infer that intent.

In the present case, may not the intent of the prisoner have been merely to solicit the woman, and to desist, if she resisted, his solicitations? Or may it not be that he had not anticipated resistance, and would desist in case it occurred? Either hypothesis will do, and either is consistent with every fact in evidence; with the pursuit, and with its abandonment, when the prisoner apprehended discovery. There is absolutely no evidence that the prisoner had formed the intent charged, viz: to know the woman in spite of resistance, and at all hazards.

We are told in the Sacred Book that "who so looketh on a woman to lust after her hath committed adultery in his heart" *adultery*, not *rape*. In the minds of men there is a wide space between the immoral intent to seduce a woman, and the criminal intent to ravish her. It is at this point that the inference drawn from the assumed identity of civilized men, with brutes, is most misleading and unfair. A man may perhaps be easily led by his passions to form the immoral intent to solicit a woman, and to attempt to execute it. But, as a reasoning being, he will pause before he forms the intent, and attempts to execute it, to commit so hideous and penal a crime as rape; one so certain of detection and punishment. The moral sense which every man has, in a greater or less degree, and the ter-

rors of the law, come in to hold him back from the determination to commit the crime, and to make him take a period for deliberation, which, in the absence of evidence to the contrary, it must be presumed, he availed himself of. Whereas, on the brute, there are no such restraints, as the gratification of his passions is neither a sin or crime. Surely the same rules of evidence cannot apply to beings so different and acting under different moral and legal responsibilities.

The difference in color between the prosecutrix and the prisoner, although it would aggravate the guilt upon the prisoner upon conviction, cannot justly affect the rules of evidence, by which his guilt is to be inquired into. These must be the same for all classes and conditions of men.

It seems to me that the decision of the court is a departure from what I had supposed to be a firmly established rule of evidence for the protection of innocence.

BYNUM, J. Concurs in the dissenting opinion of Justice RODMAN.