It appeared from the evidence that, about dusk on a certain evening, the defendants Jones, Lingle and Mask went to the house of one Minnie Moose; that defendant Jenkins was sitting in the door when they arrived. Jones said, "Good evening, Jim," meaning Jenkins; "are you at home?" Jenkins replied, "I'm at home wherever I have my hat on." Jones said, "You were not at home the other night when you cut me, and, God damn you, step out and we will settle it." Jones rode a mare that had a colt with her. Lingle was riding a stud horse and Mask a mule. When Jones made the last of the above remarks he and Lingle dismounted, for the purpose, Jones said, of fighting Jenkins, and started towards Jenkins (Jones turning his mare loose and Lingle giving his stud horse to Mask to hold.) Jenkins (1238) ran out of the back door and through a swamp to his house, which was about a quarter of a mile off. Jones, Lingle and Mask followed, cursing him, but claimed to be hunting the mare of Jones (there was evidence that she had gone in that direction.) Jenkins got home. It was in evidence that Jones said he would kill him or die; would put him where some of his brothers were (that is, dead). Jenkins got home, got his gun and stepped out; crowd hallooed, and Jenkins answered, "Whoopee!"
Witness John Poplin testified: "Jones said he was hunting his mare and Jenkins, too. Jenkins told him to leave his premises, Jones cursed him. Heard seven shots fired." This witness further testified that Jenkins shot twice and before anybody else. They appeared to be coming together. When Jenkins asked for his gun the crowd seemed to be coming towards the house.
Jenkins testified that Jones and Lingle were both armed when they advanced on him at Minnie Moose's house. He further testified *Page 788 
that Jones and the other two, Lingle and Mask, were on his premises; that he ordered them off; that Jones called him "a damn cowardly son of a bitch" and "mill-burning son of a bitch." Jenkins testified, further, that he shot at them because they were going to kill him. There was evidence that Lingle stood by Jones and told him to call Jenkins a "mill burner." Lingle and Jones were both wounded.
The court charged the jury, among other things: "That if at Minnie Moose's house Jones and Lingle got off their horses (1239) and advanced upon Jenkins with the intention of fighting him and cursing him, and Jenkins, in order to save himself from being beaten, ran off, they would be guilty. If these three men all pursued Jenkins to his home with weapons, cursing him and refusing to leave when ordered off by him, they would be guilty. If the jury believe from the evidence, beyond a reasonable doubt, that Lingle and Mask were then present at Jenkins' house, telling Jones what to say to him, to call him a `mill burner,' etc., they would be guilty." To this charge Lingle and Jones excepted.
The defendants moved for a new trial. Motion overruled. Judgment, and appeal by defendants Jones and Lingle.
Indictment for assault and battery with a deadly weapon on one Jenkins. The court charged the jury, among other things, "that if at Minnie Moose's house Jones and Lingle got off their horses and advanced upon Jenkins, cursing him, and with the intention of fighting him, and Jenkins, in order to save himself from being beaten, ran off, they would be guilty.
"If these three men all pursued Jenkins to his home with weapons, cursing him, and refusing to leave when ordered off by him, they would be guilty.
"If the jury believe from the evidence, beyond a reasonable doubt, that Lingle and Mask were then present at Jenkins, house, telling Jones what to say to him, to call him a `mill burner,' etc., they would be guilty." Defendants excepted.
The two first paragraphs of the charge seem to be authorized by S. v.Rawles, 65 N.C. 334, and the last paragraph by S. v. King, 86 N.C. 603, and S. v. Perry, 50 N.C. 9.
No Error. *Page 789 
(1240)