STATE v. COLUMBUS JONES, et al.

*Assault with Deadly Weapon—Instructions.*

Where, in the trial of an indictment for assault and battery, the
court charged (1) that, if at M.'s house, J. and L. (two of the
defendants) got off their horses and advanced upon prose-
cutor, cursing him, and with intention of fighting him, and
prosecutor ran, in order to save himself from being beaten,
they would be guilty ; likewise (2) if they all pursued J. to
his house with weapons, cursing him and refusing to leave
when ordered off by him ; and (3) if the jury believe, from
the evidence, beyond a reasonable doubt, that defendants
L. and M. (two of the defendants) were then present at pros-
ecutor's house telling J. what to say to him, to call him a
mill-burner, &c., defendants will be guilty ; *Held*, that such
instructions were proper and authorized, the first two by
*State* v. *Rawles*, 65 N. C., 334, and the last by *State* v. *King*,
86 N. C., 603, and *State* v. *Perry*, 5 Jones N. C., 9.

INDICTMENT, for assault with deadly weapons, tried before
*Bryan, J.*, at Fall Term, 1895, of CALDWELL Superior
Court.

It appeared from the evidence that about dusk, on a cer-
tain evening, the defendants Jones, Lingle and Mask, went
to the house of one Minnie Moose ; that defendant Jen-
kins was sitting in the door when they arrived. Jones
said : " Good evening Jim," meaning Jenkins, " are you
at home ? " Jenkins replied, " I'm at home whenever I
have my hat on." Jones said, " You were not at home
the other night when you cut me, and God damn you, step
out and we will settle it." Jones rode a mare that had a
colt with her. Lingle was riding a stud-horse and Mask a
mule. When Jones made the last of the above remarks,
he and Lingle dismounted for the purpose, Jones said, of
fighting Jenkins, and started towards Jenkins (Jones
turning his mare loose and Lingle giving his stud horse

to Mask to hold). Jenkins ran out of the back door and through swamp to his house, which was about a quarter of a mile off. Jones, Lingle and Mask followed, cursing him, but claimed to be hunting the mare of Jones —there was evidence that she had gone in that direction. Jenkins got home. It was in evidence that Jones said he would kill him or die; would put him where some of his brothers were (that is, dead). Jenkins got home, got his gun and stepped out. Crowd halloed, and Jenkins answered "Whoopee!"

Witness, John Poplin, testified: Jones said he was hunting his mare and Jenkins, too. Jenkins told him to leave his premises. Jones cursed him. Heard seven shots fired. This witness further testified that Jenkins shot twice and before anybody else. They appeared to be coming together. When Jenkins asked for his gun the crowd seemed to be coming towards the house.

Jenkins testified that Jones and Lingle were both armed when they advanced on him at Minnie Moose's house. He further testified that Jones and the other two, Lingle and Mask, were on his premises, that he ordered them off. That Jones called him "a d—n cowardly son of a bitch" and "mill-burning son of a bitch." Jenkins testified further that he shot at them because they were going to kill him. There was evidence that Lingle stood by Jones and told him to call Jenkins a "mill-burner." Lingle and Jones were both wounded.                   .

The court charged the jury, among other things: "That if at Minnie Moose's house Jones and Lingle got off their horses and advanced upon Jenkins with the intention of fighting him and cursing him, and Jenkins, in order to save himself from being beaten, ran off, they would be guilty. If these three men all pursued Jenkins to his

STATE *v.* JONES.

home with weapons, cursing him and refusing to leave when ordered off by him, they would be guilty.

" If the jury believe from the evidence, beyond a reasonable doubt, that Lingle and Mask were then present at Jenkin's house, telling Jones what to say to him, to call him a ' mill-burner, etc.,' they would be guilty."

To this charge Lingle and Jones excepted.

The defendants moved for a new trial. Motion overruled. Judgment and appeal by defendants, Jones and Lingle.

*The Attorney General,* for the State.
No counsel, *contra.*

FURCHES, J.: Indictment for assault and battery with a deadly weapon on one Jenkins. The court charged the jury, among other things, " that if at Minnie Moose's house Jones and Lingle got off their horses and advanced upon Jenkins, cursing him, and with the intention of fighting him, and Jenkins, in order to save himself from being beaten, ran off, they would be guilty."

" If these three men all pursued Jenkins to his home with weapons, cursing him, and refusing to leave when ordered off by him, they would be guilty."

" If the jury believe from the evidence, beyond a reasonable doubt, that Lingle and Mask were then present at Jenkins' house, telling Jones what to say to him, to call him a mill-burner, &c., they would be guilty." Defendants excepted.

The two first paragraphs of the charge seem to be authorized by *State* v. *Rawles,* 65 N. C., 334; and the last paragraph by *State* v. *King,* 86 N. C., 603, and *State* v. *Perry,* 5 Jones, 9. The judgment is

Affirmed.