After stating the case: The first question is, whether there was any evidence that defendant prosecuted the plaintiff for the assault without probable cause, for in an action of this kind it is necessary to allege and prove malice, a want of probable cause, and the termination of the former suit or proceedings. R. R. v. Hardware Co., 138 N.C. 174.
Malice may be inferred from the absence of probable cause, or may be otherwise established. Johnson v. Chambers, 32 N.C. 287; Kelly v.Traction Co., 132 N.C. 369; Merrell v. Dudley, 139 N.C. 57. And then there is general malice and particular malice, defined and carefully distinguished by Justice Hoke in Stanford v. Grocery Co., 143 N.C. 419;Downing v. Stone, 152 N.C. 525. But it is not sufficient that there should be malice alone; there must be a want of probable cause for the original proceeding, as this is an essential element of his case when a party is seeking recovery in this form of action, "and at every stage of that proceeding." The very foundation of the action is *Page 126 
that the previous proceeding was resorted to or was pursued causelessly. 26 Cyc., 20.
When it appears that there was probable cause to induce such original suit, the action will not lie, it being a full justification that the defendant had good reason for proceeding in it. Ibid., 20, 21; Jackson v.Telegraph Co., 139 N.C. 347; Fetty v. Huntington Loan Co., 70 W. Va. 688. This probable cause is defined in Moore v. Bank, 140 (157) N.C. 293, to be (quoting from the cases) "the existence of circumstances and facts sufficiently strong to excite, in a reasonable mind, suspicion that the person charged with having been guilty was guilty; it is a case of apparent guilt, as contradistinguished from real guilt. It is not essential that there should be positive evidence at the time the action is commenced; but the guilt should be so apparent as that it would be sufficient ground to induce a rational and prudent man, who duly regards the rights of others as well as his own, to institute a prosecution," citing Cabiness v. Martin, 14 N.C. 454; Smith v. Deaver,49 N.C. 513; Jaggard on Torts, 616. And again: "A reasonable or well grounded suspicion of the guilt of the accused, based on circumstances sufficient to justify a reasonable belief thereof in the mind of a cautious and prudent man, is sufficient defense to the action," citing 19 A. E. Enc. (2 Ed.), 659; Stacey v. Emery, 97 U.S. 642; Fergusonv. Arnow, 142 N.Y. 580.
When the facts are admitted, or otherwise established, what is probable cause becomes a pure question of law. Swaim v. Stafford, 25 N.C. 289;Moore v. Bank, supra. This is so thoroughly settled by the authorities that very recently we reiterated it with emphasis in Wilkinson v. Wilkinson,159 N.C. 265, quoting from Panton v. Williams, 2 Ad. El. (N.S.), 169, where it is said: "In an action of this sort, the judge must determine whether the facts, if proved, or any of them, constitute such cause, leaving it to the jury to decide only whether the facts, or those inferred from them, exist; and as that is so when the facts are few and the case simple, it cannot be otherwise when the facts are numerous and complicated. It would seem, then, that making a question on this subject must be regarded as an attempt to move fixed things, and cannot be successful either in England or here."
In the light of these principles, let us examine the facts of this case and determine their legal character with respect to the cause of action under consideration. It must be borne in mind that we are dealing with a nonsuit, and we must construe the evidence most favorably (158) for the plaintiff, and if there is any reasonable inference to be drawn therefrom which will authorize his recovery, the judge erred in ordering a nonsuit. But we think that there is clearly not any such permissible view of the evidence. It was said in S. v. *Page 127 Hampton, 63 N.C. 13: "An assault is an offer to strike another. In the case before us, the defendant placed himself immediately in front of the prosecutor, assumed an attitude to strike, within striking distance, in an angry manner, and turned the latter out of his course. This was an offer of violence, and constituted an assault, unless there was something accompanying the act which qualified it and indicated that there was no purpose of violence. The only accompaniment of the act was the declaration, `I have a good mind to strike you.' If the declaration had been, `I intend to strike you,' that would not have qualified the act favorably for the defendant. Nor if he had said, `I have a mind to strike you.' It is suggested, however, that the expression, `I have a great mind to strike,' is used to express indecision," but the Court held it would not avail the defendant. And in S. v. Myerfield, 61 N.C. 108, assault is thus defined: "An offer to strike is an act which is the beginning of the act of striking, and most usually results in a blow, as if one draws back his fist or raises a stick, it is violence begun to be executed, and amounts to an assault, being `an offer to strike.'" It was there held that there was no assault; first, when the offer is explained by a declaration showing that there is no intention to strike, and, second, when there is no intention, provided a certain condition is performed which the party has the right to impose; but if he has no right to impose the condition, it is an assault, or if the offer to strike is made with a deadly weapon, the law does not allow it to be thus explained, whether defendant had the right or not to impose the condition. We extract the following principle from S. v. Daniel, 136 N.C. 571: "The principle is well established that not only is a person who offers or attempts by violence to injure the person of another guilty of an assault, but no one by the show of violence has the right to put another in fear and thereby force him to leave a place where he has the right to be.S. v. Hampton, 63 N.C. 13; S. v. Church, 63 N.C. 15; S. v. (159)Rawles, 65 N.C. 334; S. v. Shippman 81 N.C. 513; S. v. Martin,85 N.C. 508; 39 Am. Rep., 711; S. v. Jeffreys, 117 N.C. 743."
It is not always necessary to constitute an assault that the person whose conduct is in question should have the present capacity to inflict injury, for if by threats or a menace of violence which he attempts to execute, or by threats and a display of force, he causes another to reasonably apprehend imminent danger, and thereby forces him to do otherwise than he would have done, or to abandon any lawful purpose or pursuit, he commits an assault. It is the apparently imminent danger that is threatened, rather than the present ability to inflict injury, which distinguishes violence menaced from an assault. S. v. Jeffries and S. v.Martin, supra. It is sufficient if the aggressor, by his conduct, lead another to suppose that he will do that which he apparently attempts *Page 128 
to do. 1 Archb. Cr. Pr., Pl. and Ev. (8 Ed. by Pomeroy), 907, 908. A concrete example is there stated as follows: "If, therefore, the defendant had threatened the prosecutor with violence, and the threat had been accompanied by any show of force, such as drawing a sword or knife, or if he had advanced towards the prosecutor in a menacing attitude, even without any weapon, and had been stopped before he delivered a blow, and the prosecutor had been put in fear and compelled to leave the place where he had the lawful right to be, the assault would have been complete, although he was not at the time in striking distance."
In the most favorable view of the evidence, we find that defendant Edwards was in the quiet and peaceful performance of a perfectly lawful act, with his associate, Mr. Johnson. He had the right to restore the obliterated marks of his line so as to distinguish his land from his neighbor's and preserve the evidence of his title and the extent of his boundary. While thus engaged, he is approached in a menacing manner by two men younger than himself, one much younger, and told to stand back, and one of them, the plaintiff in this action and defendant in the former prosecution, advances towards him, first with a scythe and then with large rocks, and, when within 8 feet of where he (160) was standing, orders him to get back, and defendant Edwards "got back" or retreated from his position, that is, went away from and left the place where he had a right to be. There were no qualifying words used by Humphries. Besides, he had a deadly weapon, which could have been used effectively in an instant. As we have said, there were no explanatory words, showing an intention not to strike, as in Myerfield's case, but, on the contrary, Humphries' attitude towards Edwards was a distinctly hostile and aggressive one, and his interference was, in law, unjustifiable. His language clearly shows that he intended to use the rocks if Edwards had not retreated and complied with a demand he had no right to make. "One rock might have done, but I wanted plenty, in case I needed them." He was an intermeddler, when his presence and services were not solicited or needed.
To the facts of this case the language of the Court in S. v. Rawles,65 N.C. 334, is most appropriate: "The prosecutor was where he had a right to be, and had just been engaged in repairing his fences, which some one had knocked down, and no one had the right by numbers, manner, language, weapons, or otherwise to drive him home by a different path or at a different pace than that which he chose to take. What was the prosecutor to do? Was he to stand still and submit to a battery? Can the defendants stand in a more favorable light before a court of justice merely because their violence was not fully consummated in consequence of the flight of the prosecutor? Some stress *Page 129 
seems to be laid upon the fact that the gun and other weapons were not taken from the shoulders of those carrying them. As is said in S. v.Church, 63 N.C. 15, that makes no difference, for `that would have been but the work of an instant, and was not needed to put the prosecutor in fear and to interfere with his personal liberty.'"
The plaintiff, without any legal provocation, assumed an aggressive attitude towards defendant, causing him to do what otherwise he would not have done, by putting him in fear if he refused to comply with orders. His intention was clearly manifest, that is, to use the rocks offensively, if defendant did not back away from his (161) position, which he had the right to occupy. But if his hidden intention was actually pacific, the law judges him by what he did — his acts and words — and by the necessary consequences of his conduct. Any rational and prudent man would have concluded that he was in danger, when confronted so suddenly by such a peremptory demand, accompanied by such a defiant mien, and this was sufficient to justify the prosecution of plaintiff in the Superior Court, if defendant was responsible for it or its moving spirit. Plaintiff did not approach him at the fence line, so as to inspire confidence in his good intentions, as a peacemaker, but he came towards him as a broiler, with the avowed purpose of stirring up strife and of doing violence, if he did not yield his rights, and he, therefore, deliberately brought the trouble upon himself.
But we are of the opinion that the nonsuit was right on another ground. There was no sufficient evidence that defendant Edwards instituted the prosecution for which he is now sued. He charged the plaintiff before a magistrate, and the plaintiff was acquitted, and defendant taxed with the costs. Upon appeal by him, the order of the justice was reversed, and he was discharged of the costs. The solicitor, it appears, then voluntarily, so far as the case shows, sent a bill to the grand jury, for the same assault, marking defendant Edwards as a State's witness. The court was asked to adjudge him to be the prosecutor, which he declined to do. While he was acquitted, it was incumbent upon plaintiff to show that defendant prosecuted the indictment or authorized its prosecution at some stage of it, and this he has failed to do.
So that, in any view of the facts, the judge correctly ordered a nonsuit.
Affirmed. *Page 130 
(162)