## ARTHUR W. BRYANT v. M. H. MURRAY.

(Filed 16 December, 1953.)

**1. Malicious Prosecution § 3—**

In an action for malicious prosecution the question of probable cause must be determined in accordance with whether the facts and circumstances within the knowledge of defendant at the time he instituted the criminal prosecution were sufficient to induce a reasonably prudent man to believe that plaintiff was guilty of the offense.

**2. Malicious Prosecution § 9b—In this action for malicious prosecution, evidence of want of probable cause held sufficient for jury.**

In an action for malicious prosecution based upon a nonsuited prosecution for larceny, evidence to the effect that plaintiff had taken stone from defendant's premises in defendant's absence, but that defendant had purchased the stone from plaintiff, making a part payment with the balance to be paid in cash upon delivery, and that defendant stopped payment on the check given for the balance because of dispute as to weight, and that before the warrant was sworn out plaintiff had advised defendant that he took the stone and was holding it in his yard pending settlement of the dispute, *is held* sufficient to be submitted to the jury upon the question of want of probable cause, since it shows that defendant had knowledge of facts negating felonious intent on plaintiff's part in taking the stone, irrespective of any contentions by defendant as to notation on the check, his right to direct payment, and right to possession of, or title to the stone.

**3. Malicious Prosecution § 3—**

The fact that defendant in an action for malicious prosecution, before instituting the criminal prosecution, was advised by a reputable attorney, who had been given full statement of the facts, that in his opinion the plaintiff was guilty of the offense, is not conclusive upon the question of probable cause.

**4. Same—**

The fact that plaintiff in an action for malicious prosecution had waived preliminary examination and given bond for his appearance in the Superior

Court on the charge constituting the basis for the action, and that the grand jury had returned a true bill against him in the Superior Court, makes out a *prima facie* case of probable cause only, and plaintiff is entitled to rebut the *prima facie* case.

**5. Same—**

The fact that in the first prosecution of the offense constituting the basis for an action for malicious prosecution, plaintiff's motion for judgment of nonsuit was denied at the close of the State's evidence, and a mistrial thereafter ordered for illness of the judge, is not conclusive on the question of probable cause.

**6. Malicious Prosecution § 10: Trial § 29—**

In an action for malicious prosecution an instruction to the effect that all the evidence tended to show that defendant had knowledge of facts negating probable cause and that the jury should answer the issue as to want of probable cause in the affirmative must be held for reversible error, since the instruction is tantamount to a directed verdict on the issue in favor of plaintiff upon whom rested the burden of proof.

APPEAL by defendant from *Sharp, Special Judge,* May Term, 1953, of MECKLENBURG.

This is a civil action to recover damages for malicious prosecution. The evidence pertinent to this appeal in substance is as follows:

1. Plaintiff was a partner with several of his brothers in a business in which they were engaged in cutting and selling stone at Charlotte, North Carolina, for building purposes. The defendant is a resident of Mocksville and at the time involved was engaged in building a residence for himself.

2. The defendant testified that on 14 May, 1951, he visited the plaintiff's plant in Charlotte and made an agreement for the purchase of three tons of cut stone at $60.00 per ton. According to plaintiff's evidence, the defendant placed an order for three tons of stone at $40.00 per ton and for labor at $20.00 per ton to cut the stone according to specifications; that the defendant was informed there would be some waste in cutting the stone and that he could have the waste if he wanted it. The defendant testified that he made a deposit of $50.00 on the purchase price of the stone. On the other hand, according to the evidence of the plaintiff, it was agreed that the $50.00 deposit was to apply on the cost of the labor in cutting the stone, the stone being held by the plaintiff on consignment. In any event, it was agreed that the balance would be paid when the stone was picked up. On the following day the defendant called the plaintiff and changed his order to three and one-fourth tons and also ordered certain special pieces of stone for a window sill, no price being fixed for these extra pieces of stone in this conversation.

BRYANT *v.* MURRAY.

3. On the following Thursday, 17 May, 1951, the defendant's truck driver picked up the stone in Charlotte, giving plaintiff a check for $145.00. This check had written on it: "For bal. for 3-¼ tons cut stone." At the time the stone was picked up, the plaintiff gave the defendant's driver an invoice and collected from him additional cash in the amount of $23.21. From this invoice it appears that instead of charging for three and one-fourth tons of stone, the plaintiff charged for three and one-third tons, and quoted the price of stone at $40.00 a ton and the labor at $1.00 per hundred pounds, and added $18.20 for the extra pieces of stone sold for a window sill. When the stone arrived in Mocksville the defendant weighed it and found that it did not weigh three and one-fourth tons. He then undertook to call the plaintiff, but being unable to get him he called the bank on which his check for $145.00 was drawn and stopped payment thereon. When he later got the plaintiff on the telephone, which was on 18 May, 1951, the plaintiff explained that the weight of the stone had reference to its weight before it was cut, and the defendant said he understood that it had reference to its weight after it was cut. It was agreed, however, that the defendant would keep the stone and that he would call the bank upon which his check was drawn and instruct it to pay the check. The defendant testified that he called the bank and directed it to pay the check. It developed, however, the bank made no record of the call and the stop-payment order which had been taken orally remained in effect and the check was dishonored upon presentation. After the check had been returned unpaid, the plaintiff tried to get in touch with the defendant but was unable to do so; thereupon, on 26 May, 1951, the plaintiff's brothers went to Mocksville while the defendant was out of town and took the stone from his property and carried it back to Charlotte.

4. The defendant discovered on Monday, 28 May, 1951, that the stone in question had been removed from his premises. He called the bank and was informed that the stop-payment order had not been removed and that his check had not been paid. Whereupon, the defendant called the plaintiff on long distance and was informed that he had sent for the stone and had it in his possession in Charlotte. According to the defendant's evidence, he offered to pay the amount of the check if the plaintiff would redeliver the stone to him in Mocksville but the plaintiff declined, informing him that the only way he could get the stone was to pay $25.00 more for his trouble in going after it, and that it would be necessary for him to send his own truck to Charlotte for the stone.

5. Thereafter, the defendant recited his version of the facts to an attorney, a reputable member of the North Carolina State Bar, who advised that in his opinion the plaintiff was guilty of larceny. Whereupon, the defendant swore out a warrant before a justice of the peace in

Davie County charging the plaintiff with larceny. The defendant (the plaintiff herein) was arrested on 7 June, 1951, and lodged in the jail of the City of Charlotte. He was never carried before the justice of the peace who issued the warrant, and, according to his evidence, never waived the preliminary hearing. Bond was fixed by the justice of the peace who issued the warrant, in an undated order, in the sum of $500.00 for his appearance in the Superior Court of Davie County to be held in Mocksville on 27 August, 1951. According to the record, the justice of the peace rendered the following judgment: "After hearing the evidence in this case, it is adjudged that the defendant is guilty." Bond was executed in Charlotte before a justice of .the peace of Mecklenburg County on 7 June, 1951. A true bill was returned against the defendant (the present plaintiff), at the August Term, 1951, of the Superior Court of Davie County. The cause finally came on to be heard at the August Term, 1952, of the Superior Court of Davie County and the court, after hearing the evidence, sustained a motion for judgment as of nonsuit. In the trial below, issues were submitted to the jury and answered as herein set forth:

"1. Did the defendant procure the prosecution of the plaintiff for larceny in the Superior Court of Davie County as alleged in the complaint? Answer: Yes.

"2. If so, was such prosecution without probable cause? Answer: Yes.

"3. If so, was such prosecution with malice? Answer: Yes.

"4. What actual damages, if any, has the plaintiff sustained as a result of said prosecution? Answer: $5,500.00.

"5. Was the defendant motivated by actual malice in said prosecution? Answer: Yes.

"6. If so, what punitive damages, if any, is the plaintiff entitled to recover? Answer: None."

The defendant appeals from the judgment entered on the verdict and assigns error.

*Robinson & Jones for appellant.*
*Thomas G. Lane, Jr., for appellee.*

DENNY, J. The first assignment of error is based upon the defendant's exceptions to the refusal of the court below to sustain his motion for judgment as of nonsuit.

The appellant takes the position that the court should have sustained his motion on the ground that plaintiff's evidence was insufficient to show lack of probable cause. He bases his position on four propositions, which he insists should be considered in combination, as well as singly, as follows:

"(a) Upon the uncontradicted evidence plaintiff participated in the surreptitious taking of property of the defendant in such a manner as to create a reasonable inference that the taking was with a felonious intent.

"(b) The advice of a member of the North Carolina Bar, which is now a State agency, that on a given state of facts he was of the opinion that the person charged is guilty of a particular crime, as distinguished from mere advice to swear out a warrant, should be held to be conclusive on the question of law involved in the opinion as it relates to probable cause.

"(c) The plaintiff gave an appearance bond and waived preliminary hearing and later the grand jury returned a true bill. The *prima facie* case of probable cause thus made was not rebutted.

"(d) A Superior Court Judge presiding over a trial of the criminal charge held that the evidence was sufficient to sustain a conviction."

These propositions will be considered in the order in which they are presented.

The defendant contends that the controversy between the plaintiff and the defendant as to whether a part of the price of the cut stone was for labor and a part for the unfinished stone, has no material bearing on this case. In this conclusion we concur. He does contend, however, that he had the right to direct the application of the $145.00 represented by his check and that he did so by marking thereon: "For bal. 3-¼ tons cut stone," citing *Thomas v. Bank,* 183 N.C. 508, 112 S.E. 27. It is true that where a debtor owes two or more debts and makes a payment, it must be applied according to his direction made at or before the time the payment was made. *French v. Richardson,* 167 N.C. 41, 83 S.E. 31; *Stone v. Rich,* 160 N.C. 161, 75 S.E. 1077; *Young v. Alford,* 118 N.C. 215, 23 S.E. 973; *Moose v. Marks,* 116 N.C. 785, 21 S.E. 561. Even so, the notation on the defendant's check, in light of the facts and circumstances disclosed by the record, is of no particular significance. For, as we interpret the evidence, the plaintiff informed the defendant at the time the stone was purchased that it was held by him on consignment and could not be delivered except for cash.

Immediately after the stone was delivered in Mocksville the defendant weighed it and concluded there was a shortage, and stopped payment on his check before communicating with the plaintiff. After getting in touch with the plaintiff and having a discussion with him about the loss of weight in cutting the stone, the defendant agreed to keep it and to instruct the bank to pay the check. However, the check was dishonored when presented and the plaintiff thereupon, being unable to contact the defendant, sent to Mocksville for the stone. All of the stone, including the pieces for the window sill, was carried back to plaintiff's place of business. Thereafter, on Monday, 28 May, 1951, the defendant called the plaintiff and said to him: "Someone stole my stone up here. I went out there this

morning and it was gone." The plaintiff replied: "Yes, sir, it's here on the yard. . . . You stopped payment on the check and we couldn't find you anywhere, so we picked it up and brought it back until we can get this thing settled here one way or the other."

The defendant contends that when he agreed to keep the stone and to remove the stop-payment on his check, then the title thereto passed to him. Moreover, he submits that if the title to none of the stone passed, he had the right to retain the possession thereof until his cash payments were returned.

Ownership of the stone or the right to its possession, at the time the criminal prosecution was instituted, is not conclusive on the question of probable cause. However, the decisions of this Court support the view that title to the stone never passed to the defendant since his check for the balance of the purchase price was not paid. *Motor Co. v. Wood,* 238 N.C. 468, 78 S.E. 2d 391; *S. c.,* 237 N.C. 318, 75 S.E. 2d 312; *Weddington v. Boshamer,* 237 N.C. 556, 75 S.E. 2d 530; *Parker v. Trust Co.,* 229 N.C. 527, 50 S.E. 2d 304; 46 Am. Jur., Sales, section 447, page 613. Furthermore, the fact that the defendant made a deposit with the plaintiff does not change the rule with respect to the passing of title. In the above cited case of *Motor Co. v. Wood, supra,* James P. Junghans, Jr., made a deposit of $50.00 in cash on the Ford car involved. A day or two later he gave a worthless check for the balance of the purchase price and obtained possession of the car. We held that since the check for the balance of the purchase price was not paid, the title to the car never passed to Junghans.

The question here is whether the facts and circumstances within the knowledge of the defendant, at the time he instituted the criminal prosecution, were sufficient to induce a reasonably prudent man to believe that the plaintiff took the stone with a felonious intent. Or, to put it another way, were the facts within his knowledge sufficient to induce a reasonably prudent man to suspect that the plaintiff was guilty of the offense charged? *Smith v. Deaver,* 49 N.C. 513; *Wilkinson v. Wilkinson,* 159 N.C. 265, 74 S.E. 740; *Humphries v. Edwards,* 164 N.C. 154, 80 S.E. 165; *Mooney v. Mull,* 216 N.C. 410, 5 S.E. 2d 122; *Carson v. Doggett,* 231 N.C. 629, 58 S.E. 2d 609; 34 Am. Jur., Malicious Prosecution, section 47, page 731.

The second proposition or contention submitted by the defendant is that if the facts be conceded to be insufficient to show probable cause, the defendant ought to be exonerated as a matter of law, since, before instituting the criminal prosecution he consulted a reputable member of the North Carolina State Bar, which is a State agency, and such attorney after being given a full statement of the facts, advised that in his opinion the plaintiff was guilty of larceny.

This contention will not be upheld. It is contrary to the uniform decisions in this jurisdiction with respect to advice of counsel in such cases. *Davenport v. Lynch,* 51 N.C. 545; *Smith v. B. & L. Ass'n,* 116 N.C. 73, 20 S.E. 963; *Thurber v. B. & L. Ass'n,* 116 N.C. 75, 21 S.E. 193; *Downing v. Stone,* 152 N.C. 525, 68 S.E. 9. In the last cited case, *Hoke, J.,* in speaking for the Court, said: "The decisions of this State have uniformly held that advice of counsel, however learned, on a statement of facts, however full, does not of itself and as a matter of law afford protection to one who has instituted an unsuccessful prosecution against another; but such advice is only evidence to be submitted to the jury on the issue of malice. . . . And where it is proven that legal advice was taken by a prosecutor, this too is a relevant circumstance in connection with other facts, admitted or established, to be considered by the court in determining the question of probable cause. . . . This restriction as to the advice of counsel learned in the law on facts fully and fairly stated does not seem to be in accord with the weight of authority as it obtains in other jurisdictions, . . . but it has been too long accepted and acted on here to be now questioned, and we are of opinion, too, that ours is the safer position."

The third argument submitted on the motion for judgment as of nonsuit is to the effect that the plaintiff waived preliminary examination and gave bond for his appearance in the Superior Court, in which court the grand jury returned a true bill against him. Therefore, the defendant contends that a *prima facie* case of probable cause was made out and was not rebutted in the trial below. *Jones v. R. R.,* 125 N.C. 227, 34 S.E. 398; *S. c.,* 131 N.C. 133, 42 S.E. 559. Conceding all this to be true, except the contention that probable cause was not rebutted in the trial below, nothing more than a *prima facie* case as to probable cause was made out, but not a conclusive one, and it was still open to the plaintiff to prove there was no probable cause. *Bowen v. Pollard,* 173 N.C. 129, 91 S.E. 711; *Kelly v. Shoe Co.,* 190 N.C. 406, 130 S.E. 32; *Young v. Hardwood Co.,* 200 N.C. 310, 156 S.E. 501; *Hawkins v. Dallas,* 229 N.C. 561, 50 S.E. 2d 561.

The final contention on the motion for judgment as of nonsuit is that the plaintiff was tried in the Superior Court in Davie County on the bill of indictment returned by the grand jury, which resulted in a mistrial, but the court held the State's evidence was sufficient to sustain a conviction.

The record of such trial is not in evidence. However, it is apparent from the testimony of some of the witnesses that prior to the trial in which the criminal action against the plaintiff was dismissed, the case was called at a previous term and when the State rested the defendant (the plaintiff in this action), moved for judgment as of nonsuit. The

motion was overruled and the witnesses for the defendant (plaintiff herein) were sworn and the court was adjourned for the day. It further appears that when court convened the next morning, the presiding judge was suffering from a serious attack of laryngitis to such an extent that he withdrew a juror and ordered a mistrial.

The ruling in denying the motion for judgment as of nonsuit is not conclusive on the question of probable cause. If it were otherwise, then in all such criminal prosecutions, if the defendant's motion for judgment as of nonsuit was overruled, probable cause would be conclusively established even though the jury acquitted the defendant.

The defendant's exceptions to the refusal of the court below to sustain his motion for judgment as of nonsuit are overruled. We think the plaintiff's evidence sufficient to require its submission to the jury.

The defendant, however, assigns as error that portion of her Honor's charge on the second issue, reading as follows: "Now, members of the jury, when material facts are not in dispute, what constitutes probable cause constitutes a question of law for the Court. If the facts are in dispute, you would find the facts and the Court would tell you what effect the various findings you might make would have, that is, which one would constitute probable cause and which ones would not. Therefore, since all the evidence is that the defendant knew that the reason the plaintiff took the stone was because the check had been dishonored, the Court charges you you would answer this second issue YES."

We think this assignment of error must be upheld. It was tantamount to a directed verdict in favor of the plaintiff on this issue. The burden of proof on this issue was upon the plaintiff. A directed verdict in favor of a party having the burden of proof is error. *Shelby v. Lackey,* 236 N.C. 369, 72 S.E. 2d 757, and cited cases.

For the reasons stated, the defendant is entitled to a new trial and it is so ordered.

New trial.