Cincinnati, Indianapolis, St. Louis and Chicago R.W. Co. *v.* McLain.

## THE CINCINNATI, INDIANAPOLIS, ST. LOUIS AND CHICAGO RAILWAY COMPANY *v.* McLAIN.

[No. 17,191. Filed June 9, 1896. Rehearing denied June 9, 1897.]

PRACTICE.—*Variance Between Allegations of Complaint and Proof.*— A plaintiff must recover according to the allegations of his complaint, or not at all. He cannot recover on the evidence which makes a case materially different from the case made by the pleadings. *p. 193.*

CARRIERS.—*Injury to Passenger.—Contributory Negligence.*—A passenger on a railroad train, in the night time, desiring to get off at a certain crossing where the train usually stopped, was informed by the conductor that he could get off, and was directed by the conductor to go upon the platform of the car when the train reached a certain point, and be ready to get off when the train arrived at the crossing. The passenger not only went upon the platform, but, while the train was going twelve or fifteen miles an hour, and at a point 1,600 feet from the crossing, went upon the lower step of the car, and, by a sudden jerk of the train, was thrown from the car and injured. *Held,* that the passenger was guilty of contributory negligence which precluded recovery. *pp. 193–195.*

From the Marion Superior Court. *Reversed.*

*B. K. Elliott, W. F. Elliott* and *J. T. Dye,* for appellant.

*Ayres & Jones* and *W. A. Ketcham,* for appellee.

HOWARD, J.—This was an action for damages brought by the appellee for personal injuries, caused, as alleged, by the negligence of the appellant.

The accident occurred at a point on appellant's line of road a little east of where the same crosses the Indianapolis Belt Railroad, and while appellant's train was approaching the city from the east, between ten and eleven o'clock on the night of June 28, 1888.

Appellee was a passenger, and it appears that he

wished to leave the train at the crossing of the Belt road.

It is alleged in the complaint that as the train neared the city, the appellee "inquired of the conductor in charge of said train whether or not he could get off safely at the crossing of the Belt railroad near the city of Indianapolis, and whether the train upon which he was riding would stop at said crossing; that he was informed by said conductor that the train would stop and he could get off without any danger, if he so desired; that the conductor directed him as soon as they should come to freight cars standing on the side track, which he told the plaintiff would be the first freight cars that they would pass after the time the conductor and the plaintiff were talking, to go upon the platform and be ready to get off as soon as the train came to a stop; that when the train came to the freight cars, the plaintiff, pursuant to the direction of the conductor of said train, went out upon the platform, and, as the train slowed up, he walked down to the lower step to be ready to get off, as directed by the conductor, so soon as the train should stop; that the train came nearly to a stop, but without entirely stopping, it was negligently started up with a sudden and violent jerk to go forward again, and whereby the plaintiff was thrown under the cars and so that the car wheels passed over and cut off both of his legs, and so injured him that both of his legs had to be amputated above the said injury;" that by reason of said injury he has suffered and will always suffer, and has been incapacitated from work and labor, all to his damage in the sum of $10,000.00; "that the place where he was directed to get off of said cars by said conductor was not a safe and proper place for him to get off; that said injury occurred by reason of the negligence of the said railroad company, and without any

fault or negligence whatever on his part contributing thereto."

The cause was submitted to a jury who returned a verdict for appellee in the sum of $5,500.00, together with answers to interrogatories submitted by the appellant and by the appellee.

Numerous alleged errors are assigned and discussed by counsel; but the bill of exceptions does not appear to be in the record; and the only questions before us relate to the sufficiency of the complaint, and to the correctness of the court's action in overruling appellant's motion for judgment on answers to interrogatories, notwithstanding the verdict of the jury.

The answers to interrogatories show, that at the time of his injury, June 28, 1888, appellee was a passenger on appellant's train, from Valley Junction to Indianapolis; that shortly before the train reached the Belt road he informed the conductor that he desired to get off at the crossing, and asked if he could do so; that the conductor gave the required permission, and informed appellee that he could get off without danger; that shortly before arriving at the crossing the conductor directed appellee that as soon as they reached certain freight cars standing beside the track he should get upon the platform and be ready to step off when the train should come to a stop; that the Belt road crossing was at the time a crossing of appellant's main line, the Belt road being a railroad over which passengers might be transported; that at and prior to the time of the accident the appellant was accustomed to stop its trains at the Belt and permit passengers to alight; that appellee knew that there was no passenger station or platform at or near the crossing, and knew that the Belt road was not advertised as a stopping place for the receiving or discharge of passengers, and that the stop there was a short one; that there was

then a signal keeper on duty at night, and it was the practice to slow up the train as it approached the crossing, and if a white signal was given by the keeper, showing a clear track, the train would pass on to the city without coming to a full stop; that the appellee was familiar with the movement of westbound trains at the Belt crossing, having gotten off there before; that his reason for desiring to get off at the crossing was that he wished to visit a relative living near there; that after the point was reached where the freight cars stood along the side track, the appellee got up and went out upon the platform and down to the lower step, prepared to alight when the train should come to a stop; that he stood upon the lower step, holding on to the railing and waiting for the train to stop so that he might alight; that as the train approached the Belt road it began to slow up, the steam being shut off and the air brakes applied, until it was going at a speed of about four miles an hour; that after the train had slowed up until it was running about twelve or fourteen miles an hour, and while appellee was standing on the lower step waiting to alight, the air brakes were suddenly loosed and the train started on without having come to a stop, whereby appellee was thrown from the steps and injured as alleged in the complaint; that the conductor did not notify the engineer to stop at the crossing, and the engineer did not know that the appellee was on the step or intending to get off; that the injury was not caused by the failure of the train to come to a stop at the crossing, having occurred further east than the point where the train usually stops; that the fact that the train did not come to a full stop at the usual stopping place, after slowing up, but started up again, had no effect as to the injuries of appellee; that the appellee, by direction of the conductor, went out volun-

tarily upon the platform and took the lower step while the car was in motion as it approached the Belt road; that the position taken by appellee on the lower step was a dangerous one, and known by him to be dangerous; that it was dark at the time, and between ten and eleven o'clock at night; that the conductor was in the car at the time the appellee went upon the platform, and had some conversation with him about getting off before that; that the engineer when about half or three-quarters of a mile from the crossing sounded his whistle and turned off steam; that when the train reached the switches, about 1,600 or 1,800 feet from the crossing, the air brakes were applied by the engineer, and after passing the switches the brakes were released; that after the engineer reached a point about 250 feet from the crossing the air brakes were again turned on, and the speed of the train reduced to three or four miles an hour; that the injury to appellee occurred about 1,600 feet east of the Belt road; that it was the practice of appellant, when the signal showed the Belt track not clear, to stop about 200 or 250 feet east of the crossing; that the appellee was injured several hundred feet east of the crossing and when the train was running twelve or fourteen miles per hour.

It is first contended by appellant that the facts, as found by the jury, do not make out a case, as stated in the complaint. In the complaint it was alleged that the appellee inquired of the conductor "whether or not he could get off safely at the crossing at the Belt railroad near the city of Indianapolis, and whether the train upon which he was riding would stop at said crossing; that he was informed by said conductor that the train would stop, and he could get off without any danger, if he so desired." But it appears from the answers to interrogatories that the accident did not happen "at the crossing of the Belt railroad," at the point

where the train usually stopped before crossing the Belt, but at a point about 1,600 feet, or over a quarter of a mile east of the crossing, just after the train passed the switches. The train did, in fact, come almost to a stop at the usual stopping place, 250 feet east of the Belt, the speed being there reduced to three or four miles an hour; while at the switches, where appellee was hurt, it was running at the rate of twelve or fourteen miles an hour.

Whether it could be said that the switches, 1,600 or 1,800 feet east of the Belt, were "at the crossing of the Belt railroad," in such a sense as to make the complaint good for an injury caused at the switches, but which was alleged to have been caused at the crossing where the train usually stopped, at a point only 250 feet from the Belt road, may admit of grave doubt. There is no pretense that the train ever stopped at the switches, though it does appear from the facts found that it was there slowed up to a speed of twelve or fourteen miles an hour, in order to pass the switches, then resuming its faster rate until it reached the point 250 feet from the Belt, there to wait for a clear track over the crossing.

No rule is better established than that a plaintiff must recover according to the allegations of his complaint, or not at all. He cannot recover on evidence which makes a case materially different from the case made by his pleadings. *Cleveland, etc., R. W. Co.* v. *Wynant*, 100 Ind. 160.

But a more serious question arises, both as to the allegations of the complaint, and more particularly as to the facts found by the jury, and that is, whether contributory negligence is not shown on the part of the appellee.

He was well acquainted with the locality and with

the movements of trains at that point. He knew that there was neither station nor platform at the place, and that passengers were permitted to alight only for their own accommodation, and because the train necessarily stopped there, or came nearly to a stop, in order to pass the Belt line in safety. It was late at night and dark, which added to the risk which he assumed. He desired to visit a relative living near the crossing. He was not in any way required by the conductor, or other official, to leave the train; but was permitted to do so at his own request.

It is said that the conductor told him to go out upon the platform as soon as the freight cars were seen near the track, and be ready to step off when the train came to a stop. Even if this could be an excuse to relieve him from blame for going upon the platform; yet it does not appear that any danger would have resulted to him from merely going upon the platform, as the conductor directed. He was not content to stay upon the platform, a place of comparative safety; but went down and stood upon the lower step, while the train was going over the switches at the rate of twelve to fourteen miles an hour. The jury find that this was a dangerous place; and find, moreover, that he knew that it was dangerous. The rough movement of the cars over the switches, their swinging from side to side, and the necessary changes in the rate of speed, made it an exceedingly hazardous place to stand, particularly at night. The appellee took this place himself, and not by direction of the conductor, who told him to go upon the platform. No doubt appellee thought himself perfectly competent to look out for his own safety in a place which he knew to be one of peril; the jury find that he had got off there before.

While, under the circumstances, we do not think that the permission of the conductor to go out upon

the platform could be an excuse for one to go into a place of known peril, yet it is clear that if the appellee had stayed upon the platform until the train slowed up near the Belt, at the usual place of stopping, he could have then gone down the steps and alighted in safety, as was the evident result intended by the conductor. But even if the conductor had directed him to go down and stand upon the lower step, that could not justify him in taking a position known to him to be one of great danger. *Cincinnati, etc., R. R. Co.* v. *Carper,* 112 Ind. 26, and authorities cited at page 29.

We think it is clearly shown from the record that the appellee was himself guilty of contributory negligence in going upon the lower step of the platform at night and while the train was running at a speed of twelve to fourteen miles an hour. See generally, *Goldstein,* v. *Chicago, etc. R. W. Co.,* 46 Wis. 404, 1 N. W. 37; *Chicago, etc., R. R. Co.* v. *Hazzard,* 26 Ill. 373; *Hoehn* v. *Chicago, etc., R. W. Co.,* 152 Ill. 223, 38 N. E. 549; *Toledo, etc., R. R. Co.* v. *Wingate,* 143 Ind. 125, 58 Am. and Eng. R. R. Cases, 232, and authorities cited in last case.

Even, therefore, if the answers to interrogatories were responsive to the allegations of the complaint, still these answers show that appellee was himself guilty of negligence contributing to his injury, and consequently that he cannot recover.

The judgment is reversed, with instructions to render judgment in favor of the appellant on the answers to interrogatories, notwithstanding the verdict of the jury.