THOMAS RANKIN

*v.*

PHILIP M. SHARPLES.

*Opinion filed December 16, 1903.*

1. CONTRACTS—*a contract to indemnify a party against infringement suits construed.* A contract whereby a firm handling cream separators is entitled to retain a per cent of the list price to indemnify them against damages by reason of any guaranty given by them to their customers to indemnify the latter against damages recovered against them on account of using said separators, does not cover cases where there was no guaranty given by the firm.

2. SAME—*effect where notice of suit was not given under a contract of indemnity.* Where a contract permitting a firm to retain a per cent of the list price of an article to indemnify them against a certain class of infringement suits provides that they shall give immediate notice of such suits to the other party, a failure to give such notice is *prima facie* evidence that no such suits were instituted.

3. EVIDENCE—*legal sufficiency of document is a question for the court.* The legal sufficiency of a document purporting to be a license to use certain patents is a question for the court, and is not a subject for expert testimony by patent attorneys or other witnesses.

4. INSTRUCTIONS—*when instructions are properly refused.* Instructions are properly refused which are not based upon the evidence or are not connected with the issues involved, or which refer the jury to matters not before them.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

This is an appeal from the Appellate Court for the First District to bring in review a judgment of that court affirming a judgment of the circuit court of Cook county in an action brought by appellee, against appellant.

The Appellate Court fairly and fully stated the case, as follows:

"December 12, 1895, appellee brought an assumpsit against appellant upon a contract executed by and between Sharples and appellant and his partner, Davis, dated March 24, 1890, to the following effect: That Sharples is engaged in the manufacture of Sharples cream separators, which are alleged to be infringements of certain patents; that Davis & Rankin wish to be protected against loss by reason of purchasing and selling said separators and to be indemnified upon any guaranty they may give to any person or persons purchasing from them and using such separators. It is agreed that Sharples will sell Davis & Rankin his separators at twenty-five per cent below list price, and that Davis & Rankin shall retain fifteen per cent of the list price to secure and indemnify them against loss and damage in defending any suit brought against them because of their purchase or sale of such separators; also to protect and indemnify them against loss caused by any guaranty given to any person or persons in case any suit should be instituted against any person or persons on account of using such separators purchased from Davis & Rankin. It is agreed that Davis & Rankin shall retain said fifteen per cent of separators already purchased by them, as well as those hereafter purchased, to secure and indemnify them against loss, as above set forth. It is agreed that Davis & Rankin, at the expiration of one year after all litigation has been finally settled which in any way affects the right of said Davis & Rankin to purchase and sell said separators, or in any way affects the right of any person or persons in using said separators which they have purchased from said Davis & Rankin, shall pay over to said

Sharples said fifteen per cent retained for the purposes herein set forth, provided that they shall not be required to pay the same, at the expiration of said year or thereafter, unless said Sharples shall make good to them any loss or damage suffered on account of any suit or suits instituted against them because of their purchase or sale of said separators. It is agreed that Davis & Rankin shall give Sharples immediate notice of any suit instituted against them or against any person or persons purchasing from them.

"The bill of particulars filed with the declaration shows the sale of nine Sharples separators to the firm of appellant in 1889 and of fifteen during the first three months of 1890, and it also states that fifteen per cent of the price of these twenty-four separators was retained by such firm, amounting to $1443.75, to which sum interest should be added from April 3, 1891. Issue was joined and a trial had, in which a verdict was rendered against appellant for $1970.50, and judgment was entered thereon. From that judgment this appeal was taken."

DEFREES, BRACE & RITTER, for appellant.

ARTHUR W. UNDERWOOD, for appellee.

Per CURIAM: Appellant, in his brief in this court, in speaking of the opinion of the Appellate Court as to the amount found to be due from appellant, says: "We have never made any point in that court or the trial court as to the amounts in the hands of Davis & Rankin or the amount of the recovery. The question is, can there be any recovery; and secondly, was the case properly tried; that is, was it fairly presented to the jury under the rulings and instructions of the trial judge?"

The Appellate Court, in considering the case, said, in part:

"An examination of the contract shows that this fifteen per cent was retained by Davis & Rankin to indemnify them against any loss, expenses or damages that

might come to them (1) 'in defending any suit brought against Davis & Rankin because of their purchasing or selling said separators;' (2) and also to protect and indemnify them against any loss, expenses or damages that may be caused them 'by reason of any guaranty given by said Davis & Rankin to any person or persons * * * to indemnify said persons from damages recovered * * * in any fully litigated case * * * instituted against said persons on account of their using said separators purchased of said Davis & Rankin.' Said contract further provides, 'that Davis & Rankin shall give immediate notice to said Philip M. Sharples of any and all suits instituted against Davis & Rankin on account of their purchasing or selling said separators, and also shall give immediate notice of any and all suits instituted against any person or persons on account of said person or persons using said separators which were sold to said person or persons by said Davis & Rankin.' It is further stipulated therein 'that said Davis & Rankin, at the expiration of one year after all litigation has been finally settled which in any way affects the right of said Davis & Rankin to purchase or sell said separators, or in any way affects the rights of any person or persons in using any of said separators which said person or persons have purchased of said Davis & Rankin, they shall pay over to said Philip M. Sharples said fifteen per cent of said list price retained by them, with interest, for the purposes herein set forth.' Then follows a proviso that such payment need not be made unless Sharples shall first make good to Davis & Rankin all loss, expense and damage, if any, which they have suffered by reason of any such suits instituted against them or on account of any such suits brought against persons to whom Davis & Rankin have sold said separators.

"There is apparently no dispute but that Davis & Rankin purchased twenty-six separators from appellee prior to 1891 and retained in their hands fifteen per cent

of the list price thereof.    The bill of particulars filed
with the declaration sets forth the sale of twenty-four
Sharples separators from appellee to Davis & Rankin in
the years 1889 and 1890 for the sum of $9625, fifteen per
cent of which amounts to $1443.75,—the principal sum
claimed in this action.    *    *    *

"When appellant was on the stand he was asked as
to certain licenses, and the number of them, tendered
to him by appellee.    He answered: 'Later he brought
in some, I would say eight or nine documents, that pur-
ported—or there might have been twenty-six of them, so
far as I know now,—showing and purporting to be an
individual license for each machine we had purchased.'

"Interest for the term of one year upon the sum
claimed herein was paid by appellant, and credit was
given therefor by appellee.    The jury were therefore
fully justified in finding that Davis & Rankin, at the time
this suit was begun, had in their hands $1443.75 of the
money of appellant, and that upon this sum interest was
due from April 3, 1891.

"The court instructed the jury upon the assumption
that the number of Sharples separators sold to Davis &
Rankin was twenty-six.    The foregoing evidence tends
to support the instruction in that particular, and it is
beyond question that the number of separators so sold,
and from the price of which Davis & Rankin had retained
fifteen per cent, was at least twenty-four.    Upon the as-
sumption that the instruction should have stated the
number of such separators at twenty-four instead of at
twenty-six, that error did no harm, as the damages found
by the jury were confined to fifteen per cent upon the
selling price of twenty-four separators.

"The question remaining is, was this sum of $1443.75
due and owing at the time suit was brought?

"The evidence shows no notice given to appellee by
Davis & Rankin, at any time, of any suit or suits brought
against them or against any person to whom they had
206—20

sold a separator. It was the duty, under the contract, of Davis & Rankin to 'give immediate notice' to appellee of such suit or suits. Without the giving of such notice Davis & Rankin would have no right to be protected from or to be indemnified for any loss, expenses or damages that might be caused to them by the bringing or the prosecution of such suit or suits. In the absence of the notice thus required the jury were justified in the finding, which is inherent in their verdict, that no suit or suits, of which notice should have been given, were ever instituted. Again, this record does not show that Davis & Rankin ever gave 'any guaranty' to any person to whom they sold a Sharples separator. If they sold a separator to anyone without giving to the purchaser their guaranty to indemnify him 'from damages recovered * * * in any fully litigated case * * * instituted' against him on account of his using such separator, appellee is not concerned therein. The beginning or the existence of such a suit would not bar recovery in this action.

"Appellant, to show that this suit was prematurely brought, interposes the records, or partial records, in seven suits concerning separators. But none of these suits were against Davis & Rankin or against any person to whom they had sold a separator, hence such litigation did not affect 'the right of Davis & Rankin to purchase and sell said separators,' nor did it affect 'the right of any person or persons in using said separators' purchased from Davis & Rankin.

"There were but two patents which are said to be infringed upon by appellee involved in these suits. They are No. 293,314, granted February 12, 1884, owned by the Aktiebolaget Separator Company, of which the DeLaval Separator Company was the sole licensee. December 24, 1891, such owner and sole licensee of the one part, and appellee of the other part, entered into an agreement, whereby appellee and his vendees were released from all liability, whether for past or future infringement un-

der said patent. As to the Thompson-Houston patent
No. 239,659, owned by Serena Berger, and of which the
Philadelphia Creamery Supply Company was the sole
licensee, the latter company, on December 31, 1892, on
the request of appellee, released Davis & Rankin 'from
all liability of every kind whatsoever,' by reason of the
'sale, use or ownership of twenty-six' separators sold by
appellee to them prior to March 24, 1890. · This release
was offered to appellant not later than the year 1892.
When offered to him, the appellant refused to accept it,
either in its then form, or when, shortly afterwards, it
was presented to him in the shape of individual licenses
covering each machine he had purchased from appellee.
David T. Sharples says that when he tendered the li-
cense to appellant the latter wanted to know what evi-
dence appellee had used to settle the suit, and when
told that such evidence cost money and it would not be
divulged to him, he said if he could not have the evidence
he would not pay this fifteen per cent, and 'that he could
stand us off for a good many years upon technicalities.'

"In our opinion there is ample evidence in this record
to justify the jury in finding that all litigation, if any
there had been, affecting the rights of Davis & Rankin
or of any of their customers holding their guaranty, had
ceased and determined more than one year next prior to
the commencement of this cause.

"Appellant complains that the trial court let in, over
his objection, copies of docket entries and opinions in
certain infringement suits. In so doing he misinterprets
the ruling of the court, which was: 'I will let these go
in for whatever they are worth; you can save an excep-
tion, but they are not going to be read to the jury.' For
all practical purposes this was an exclusion of the evi-
dence. Even if they had been admitted, such action is
not reversible error, for the reason that the release in
the one case and the license in the other rendered such
evidence immaterial.

"The objection to the remark of the court, during the cross-examination of David T. Sharples as to the suit against Buchanan, that 'I will let him answer the question, but it is not pertinent,' cannot avail appellant, because the suit against Buchanan was based upon the use of a separator neither bought nor sold by Davis & Rankin. Moreover, the question then asked was not proper in cross-examination.

"Appellant called one Pierce, a patent lawyer, and offered to show by him that he (Pierce) gave Davis & Rankin an opinion upon the legal sufficiency of the license tendered to them, signed by the Philadelphia Creamery Supply Company. It is not necessary to quote authorities to sustain the proposition that the legal sufficiency of documents in evidence is for the court, and that it can not be testified to by witnesses, however learned. To state the proposition is to argue it. The other question asked of the witness Pierce and ruled out by the court called for hearsay evidence, and for that reason the ruling was proper.

"Appellant objects to certain instructions given or refused. The first instruction given for appellee is not subject to the criticism set forth. Appellee, under the terms of the contract in this case, was not bound to show that all litigation existing at the time of the contract, or subsequently commenced, which might in any way affect the rights of Davis & Rankin, or their vendees, to sell and use the separators, had been finally settled. Appellee did, however, show *prima facie* that no suits had been brought against Davis & Rankin or against their vendors, and that all suits in which they could be in any wise properly concerned had been ended by dismissal, decree, release or license for more than one year next prior to the beginning of this suit.

"In our opinion appellee's instruction No. 2 does not call upon the jury to determine a question which the court should have passed upon. It left to them to find,

from all the evidence, whether or not the litigation named had been settled in time.   The contract in question did not require appellee to reveal to Davis & Rankin the terms of any settlement he might make, but does require them to pay over this money at the expiration of one year after all litigation had been settled.

"Appellant's third instruction was properly refused. It was not based upon the evidence.   In addition thereto, the records referred to in that instruction, and also in Nos. 4, 5 and 6 of appellant's refused instructions, were not before the jury.   It may also be said that as to refused instruction No. 4 there is no evidence that the separators described in the case named therein 'are the same separators' purchased by Davis & Rankin from appellee.

"The fifth and sixth refused instructions are bad in this: that each is wholly immaterial, since the suit therein named is in nowise connected with the issue involved in this action.   Refused instruction No. 10 is covered fully by instruction No. 9 as given.

"It was not error to refuse appellant's twelfth instruction, because it is abstract and is not to the issue.   The thirteenth refused instruction is subject to the same criticism.   The seventeenth refused instruction is based upon a misconception of the contract, and its refusal was therefore not error."

We have carefully gone over the abstract, briefs and arguments as presented to this court, and regard the remarks of the Appellate Court, as above set forth, as entirely covering the case and the conclusions of that court as in harmony with the facts and the law.   We concur in and adopt what is there said, and as the opinion of this court is that the judgment of the Appellate Court, which is in conformity with this opinion, is right, and that in the record there is no reversible error, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*