## McGlone *v.* Hauger.

[No. 8,199. Filed February 18, 1914. Rehearing denied April 9, 1914. Transfer denied May 13, 1914.]

1. APPEAL. — *Questions Reviewable.* — *Instructions.* — *Absence of Evidence from Record.*—*Presumptions.*—In determining the question of whether there was error in instructions given, the court on appeal must assume, in the absence of the evidence from the record, that all evidence within the issues to which such instruc-

tions could be applicable was before the court giving them, and will look to the pleadings to determine whether they were within the issues · and their applicability to evidence that might have been introduced.   p. 248.

2.  RAPE.—*Assault With Intent to Rape.—Civil Actions.—Instructions.*—Where a complaint for damages alleged that defendant removed all his clothes excepting his undershirt, and broke into plaintiff's bedroom where she was lying in bed clad only in her nightrobe, made an indecent proposal to her, with force and arms assaulted, struck and beat her, laid hold of her and threw her onto the bed and attempted to ravish her, that when she attempted to escape defendant pursued her and again attempted to assault and ravish her, that to avoid defendant she was forced to escape through a window, and that by reason of such wrongful acts plaintiff suffered great bodily and mental anguish, instructions given by the court defining an assault both in its general and its restricted sense, stating certain facts within the issues, which if found, might be considered with all the other evidence in determining whether defendant committed an assault or an assault and battery on plaintiff, and stating that if certain facts were found the verdict should be for plaintiff, if it was found that she had reasonable grounds to believe that defendant intended to use force upon her, were not erroneous.   pp. 249, 252.

3.  ASSAULT AND BATTERY.—*Complaint.—Issues.—Proof and Variance.*—While a complaint should proceed on a single theory, and a recovery, if any, must be upon the theory adopted, under a complaint for damages for an assault and battery with intent to rape, there could be a recovery on proof of the assault without proving a battery, since every battery necessarily involves an assault, but there could be no recovery for an assault separate and distinct from, and in no way connected with, the battery charged. p. 252.

4.  RAPE.—*Assault With Intent to Rape.—Civil Liability.*—Where defendant removed all his clothing, except an undershirt, broke into plaintiff's bedroom at an hour of night when she might be expected to be disrobed and in bed, and, though ordered to do so, failed to leave the room or to explain his presence, there was an assault as distinguishable from a preparation for an assault, since she had reasonable ground to believe that his purpose and intention was unlawful, that he proposed to lay hands on her, and that he had the present ability to do· so.   p. 256.

5.  RAPE.—*Assault With Intent to Rape.—Civil Actions.—Instructions.*—In an action for damages for an alleged assault and battery with intent to rape, an instruction correctly defining a battery, without attempting to indicate the method of arriving at the measure of damages resulting from the battery, was not erroneous or misleading in stating that "the law can not draw

the line between the different degrees of violence, and prohibits the first and lowest state of it". p. 257.

6. RAPE.—*Assault With Intent to Rape.—Civil Actions.—Instructions.*—In an action for damages for an assault and battery with intent to rape, an instruction that if defendant disrobed and without invitation entered plaintiff's bedroom after she had retired for the night, that on being ordered to leave the room he refused to do so and attempted to throw plaintiff on the bed, and that if plaintiff escaped through a window, the finding should be for plaintiff, was not objectionable as failing to characterize the acts as rude, insolent or angry, and as omitting the element of unlawfulness and the element of damages suffered, since the facts required to be found supplied grounds for inferring the constructive intent which made the wrongful act wilful, and rendered unnecessary a requirement that the jury should find the act wrongful, or that it was rude, insolent or angry. p. 258.

7. RAPE.— *Assault With Intent to Rape.— Civil Liability.— Damages.*—Where defendant, clothed only in an undershirt, without plaintiff's invitation or consent, entered plaintiff's bedroom after she had retired for the night, and though told to leave the room did not do so, but attempted to throw plaintiff on the bed, she was entitled to recover without proof of actual damages, since the law presumes that nominal damages at least result from such a civil wrong. p. 259.

8. RAPE.—*Assault With Intent to Rape.—Civil Liability.—Instructions. — "Physical Suffering". — "Mental Pain and Anguish". — "Humiliation".*—In an action for damages for assault and battery with intent to rape, an instruction that in assessing the damages the jury could consider the physical pain and suffering caused to plaintiff, if any, and also the mental pain and anguish, and the shame and humiliation, if any, which would naturally follow from the assault, was not objectionable as violating the rule against the assessment of double damages, since, while "physical suffering" is in a sense mental, it is generally understood to mean the suffering or pain flowing directly from the physical injury, while "mental pain and anguish" relates more particularly to the consequences and result of the injury, and "humiliation" differs from both in that it is not wholly personal but is a state of mind generally induced by the consciousness of the injured party that others are aware of the insult and wrong suffered. p. 259.

9. RAPE. — *Assault With Intent to Rape. — Civil Liability. — Elements of Damage.*—In an action for damages for an assault and battery with intent to rape, the physical pain and suffering caused to plaintiff, and the mental pain and anguish, and the shame and humiliation, resulting from the assault are proper elements of damages. p. 260.

10. TRIAL.—*Verdict.*—*Venire De Novo.*—Where a verdict is so defective and uncertain that no judgment can be rendered on it, a *venire de novo* should be granted, but on appeal the overruling of such a motion, even if erroneous, will be regarded as harmless where it is apparent from the record that the uncertainty of the verdict has been cured and substantial justice done by the judgment rendered. p. 260.

11. TRIAL.—*Verdict.*—*Uncertainty.*—*Evidence to Explain.*—Where a verdict was returned for plaintiff for "fifteen (1500 00) dollars", the affidavits of nine of the jurors, of the clerk of the court who read the verdict when returned, and of plaintiff's attorneys who were present at the reading, to the effect that the jury intended to return a verdict for $1500, that the clerk so read it and that all the affiants understood it to be a verdict for $1500, were properly received in support of a motion for judgment, since, while jurors are prohibited from showing misconduct or any act on their part to impeach their verdict, their evidence is admissible to perfect their verdict or correct any inadvertence or mistake that has occasioned the entry of a verdict not in accord with their finding, and it was apparent that the omission of the word "hundred" was a mere oversight or clerical mistake. p. 260.

12. APPEAL.— *Review.*— *Harmless Error.*— *Overruling Motion for Venire De Novo.*—Although a verdict was such as to render proper the granting of a motion for a *venire de novo*, where it appears from the record that after the overruling of such motion the court received affidavits of the jurors showing that the uncertainty was the result of a clerical omission and stating that the construction placed on the verdict by the clerk of the court when it was read represented the true verdict, the imperfection in the verdict was thereby cured and the error in overruling the motion for a *venire de novo* was rendered harmless, although it would have been the better practice to have received the evidence in explanation of the verdict before ruling on the motion for a *venire de novo*. p. 262.

From Superior Court of Vigo County; *John E. Cox,* Judge.

Action by Myrtle Hauger against Joseph McGlone. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*James H. Caldwell* and *McNutt, Wallace & Sanders,* for appellant.

*Josiah T. Walker* and *Foley, Royse & O'Mara,* for appellee.

HOTTEL, J.—This is an appeal from a judgment in appellee's favor for $1,500 damages alleged to have resulted from personal injuries inflicted by appellant. The cause of action in which the judgment was obtained was stated in a complaint in two paragraphs the sufficiency of neither of which is questioned in this court. The only answer was a general denial. On the issues thus formed there was a trial by a jury which returned the following verdict: "We the jury, find for the plaintiff and assess her damage at fifteen (1500 00) dollars. A. L. Howerton, Foreman."

Appellant at the same term in which the verdict was rendered filed a motion for a *venire de novo,* giving as his reasons therefor, that "(1) The verdict of the jury is so uncertain, indefinite and ambiguous that no judgment can be rendered thereon; (2) the verdict of the jury is uncertain, indefinite and ambiguous in stating the amount of damages assessed in favor of plaintiff and therefore no judgment can be rendered thereon." This motion was overruled and appellant then filed a motion for new trial which was also overruled, on March 10, 1910. On May 21, 1910, appellee tendered for filing a motion for judgment in the sum of fifteen hundred dollars ($1,500.00) together with certain affidavits in support thereof to the effect that the true verdict of the jury was for $1,500. Over objection by appellant, appellee's motion and affidavits were filed, the motion for judgment on the verdict sustained and judgment rendered against appellant in the sum of $1,500. Appellant then made a motion to modify the judgment by striking out, "The amount named therein, to wit: fifteen hundred dollars ($1,500.00) and inserting in lieu thereof * * * fifteen dollars ($15.00)", which motion was also overruled. The rulings on each of said motions are separately assigned as error and relied on for reversal.

Under the specifications in his motion for a new trial, appellant claims error in the giving of certain instructions

requested by appellee, and inasmuch as he has not seen fit to bring to this court the evidence given on the trial below we must assume that such court had before it any and all evidence admissible under either paragraph of the complaint to which the instructions could be said to be applicable. *Mankind* v. *Pennsylvania Co.* (1903), 160 Ind. 447, 454, 67 N. E. 229; *Chestnut* v. *Southern Ind. R. Co.* (1901), 157 Ind. 509, 515, 516, 62 N. E. 32; *Michigan, etc., R. Co.* v. *Farrell* (1913), 52 Ind. App. 603, 99 N. E. 1026. We must therefore look to the complaint to determine whether the instructions are within the issues and applicable to the evidence that might have been introduced in support thereof. The second paragraph sets out more specifically and in detail the facts on which appellee relies for recovery, and, for the purpose of an intelligent understanding of the discussion of the questions presented by the objections to the instructions, an indication of its averments alone will be sufficient.

These averments are in substance as follows, viz., plaintiff is the niece of defendant's deceased wife and on May 23, 1906, and for a long time prior thereto had been employed in defendant's home in Vigo County, Indiana, as a domestic servant. She was then twenty-two years of age and unmarried. Defendant was then about sixty years old and had a family of several children living in his home with him. On said day all the inmates of the home, except plaintiff and defendant had gone out for the evening, and plaintiff, about nine o'clock, p. m., retired to her room and went to bed. Shortly afterwards defendant removed all his clothes excepting a short undershirt, and *broke into plaintiff's bedroom where she was lying in bed, attired only in a nightrobe.* She jumped from the bed when defendant came into the room and he then *made an indecent proposal to her.* She then attempted to escape from the room, and defendant then *with force and arms assaulted, struck and beat her* and with force and violence assaulted and *laid hold*

*of her and threw her onto the bed and attempted to ravish her.* Plaintiff struggled to get away from defendant, and he *pursued her* and *again attempted to assault and ravish her,* and to avoid defendant, plaintiff was forced to leap through an open window and travel more than half a mile, to the nearest house, with no other covering than her torn nightrobe. *By reason of such wrongful acts* of defendant, *plaintiff suffered great bodily and mental anguish,* and suffered great shame, humiliation and injury, etc. Plaintiff has been damaged by the *wrongful acts* of the defendant in the sum of $10,000.

Instruction No. 2, objected to reads as follows: "An assault is the act of intentionally applying force to the person of another directly or indirectly, or attempting or threatening by any act or gesture to apply such force to the person of another, if the person making the threat causes the other to believe upon reasonable grounds that he has the present ability to effect his purpose." This definition of assault is substantially that given in the text-books. See Pollock, Torts (6th ed.) 210, and other authorities cited herein. In fact we do not understand that appellant is making any objection to the correctness of the definition, but contends that the instruction "is not within the issues because it defines an assault in its general, and also in its restricted sense when the theory of the first paragraph of complaint is that there was an assault and battery, and the second paragraph that there was an assault and battery with intent to ravish; that the definition of an assault in this connection tended to mislead the jury." Inasmuch as a similar objection is made to instructions Nos. 7 and 8, given at appellee's request, we also set them out in this connection. "No. 7. If you find from a preponderance of the evidence that on and prior to the 23rd day of May, 1906, plaintiff had been working for the defendant, and that she occupied a bedroom adjacent to the bedroom occupied by the defendant,

and that there was a door connecting the two rooms which was west of the foot of the bed which was then occupied by the plaintiff, and that said door opened back to the west, and that the defendant on the night of said 23rd day of May, entered said bedroom while the plaintiff was in bed and advanced to a point about two feet west of the center of the foot of said bed, and that he called the plaintiff's name and she ordered him to leave the room, and that he stood at the foot of said bed or remained in said room, and made no offer to depart therefrom until he had seen her escape from said room through a window, then in such event you have a right to take these things into consideration together with all the other evidence in the case for the purpose of determining whether or not the defendant did actually upon said occasion commit an assault or an assault and battery upon said plaintiff." "No. 8. If you find from a preponderance of the evidence that defendant went into plaintiff's bedroom on or about the 23rd day of May, 1906, in the nighttime after plaintiff had retired for the night, and that before going into plaintiff's room, defendant removed his pants, shoes and stockings, and that defendant went into plaintiff's bedroom without the consent of plaintiff and against her will, with intent to assault her, and that plaintiff ordered defendant to leave said room, and that defendant did not do so and did not offer any explanation for his presence in said room, and while defendant was in said room, plaintiff became frightened and went over the foot of her bed and attempted to get out the door of said room, and that defendant was between plaintiff and the door, and that plaintiff then went out of said room through a window and went half a mile to the house of defendant's daughter where she stayed all night, and as a result of the foregoing facts she suffered physical and mental pain, then you shall find for plaintiff if you also find from a preponderance of the evidence that the

plaintiff believed and had reasonable grounds to believe that defendant intended to use force upon her then and there.''

Appellant cites several cases in support of the objections above indicated as urged against each of the instructions, but the most favorable to his contention are, *Shapiro* v. *Michelson* (1898), 19 Tex. Civ. App. 615, 47 S. W. 746; and *Stivers* v. *Baker* (1888), 87 Ky. 508, 9 S. W. 491. The case first cited, like the one at bar, was an action for damages for assault and battery on Shapiro by the defendant in error, and plaintiff had requested the trial court to give an instruction to the effect that an assault and battery includes an assault and that if the assault alone was proven that the plaintiff might recover. The instruction was refused, and the court of appeal, in discussing this action of the trial court, used the following language, which is quoted by appellant in his brief, and particularly relied on as presenting and supporting his contention in this case, viz., *''The allegations of fact* as stated in the petition, to which alone the court may look in determining whether a cause of action is alleged, *present in this case only the issue whether or not a battery was committed on the plaintiff,* and the court having clearly and fairly submitted that issue to the jury, presented for their determination all that they were entitled to consider. While it is true an assault may be included within a battery, still, *if the plaintiff desires solely to recover upon a state of facts which show that only an assault had been committed, the pleadings should be shaped to this end, and the petition, by a proper count, present that issue.''* (Our italics.) Appellant lays particular stress on the words italicized in this quotation and insists that the use of the word, ''assault'' in the paragraphs of complaint here involved is a legal conclusion and, that in the absence of the particular allegations regarding the beating, that is showing the battery, neither paragraph of complaint would be good on demurrer. We

recognize appellant's contention that a complaint
3. must proceed on a single definite theory and that the
plaintiff, if he recover at all, must recover on the
theory adopted therein. *Barrett* v. *Cleveland, etc.*
2. *R. Co.* (1911), 48 Ind. App. 668, 96 N. E. 490; *Cincinnati, etc., R. Co.* v. *McClain* (1897), 148 Ind. 188, 44 N. E. 306; *Euler* v. *Euler* (1914), 55 Ind. App. 547, 102 N. E. 856, and cases cited. The instructions in question did not violate this rule. We are unwilling to follow to its limit the doctrine laid down in the case quoted from, if it is to be understood therefrom that the plaintiff who charges an assault and battery is bound by such charge to prove the battery before he is entitled to recover. We might have some hesitancy in holding that where the plaintiff in a civil action charges an assault and battery and seeks to recover damages resulting therefrom that he should be allowed to prove or recover for an assault separate and distinct from, and in no way connected with, the battery charged, because, in such case there would be some reason for saying that such proof and recovery would be a departure from, and outside of the issues tendered by the pleading; but such is not the question here presented and to say that the plaintiff in such an action can not recover for the assault only if connected with and included in the battery charged, unless he separately avers and pleads such assault, presents a very different question. Every battery necessarily involves an assault. If a person who is in striking distance strikes at another and hits him the battery is completed, while, if such person strikes at, and misses the other the assault alone is committed. The assault was just as much present in the one case as the other, and whether the battery was perfected depended rather on the effect of the assault and not on its existence or presence. In each of the assumed cases the wrong was a trespass on the person, and whether the trespass attempted was consummated and ended in the battery or miscarried and ended with the

assault, had to do with the result, or the injury inflicted, rather than with the original wrong or trespass intended. In other words, in such a case, proof of the misguidance of the attempted blow might very properly affect and diminish the amount of recovery, but it certainly ought not to completely defeat it simply because the plaintiff charged both the assault and battery instead of charging the assault alone.  This conclusion, we think, is supported by the definition of a "battery" and an "assault."  Sir Frederick Pollock in his work on torts, says:  "Battery includes assault, and although assault strictly means an inchoate battery, the word is in modern usage constantly made to include battery.  No reason appears for maintaining the distinction of terms in our modern practice."  Pollock, Torts (6th ed.) 210.

Judge Cooley, in his Elements of Torts said:  "The right to one's person may be said to be a right of complete immunity:  to be let alone.  *  *  *  But the attempt to commit a battery  *  *  *  involves usually an insult, a putting in fear, a sudden call upon the energies for prompt and effectual resistance.  *  *  *  There is consequently abundant reason in support of the rule of law which makes the assault a legal wrong even through no actual battery takes place."  Cooley, Torts (2d ed.) *29.  The same learned writer in his work on torts (note to p. *161) said: "Presenting an unloaded gun at one who supposes it to be loaded, within shooting distance, is not such an assault as can be punished criminally, although it may sustain a civil action."  Cooley, Torts (2d ed.) *161.  In 2 Greenleaf, Evidence (16th ed.) §87, it is stated:  "Nor is it necessary to prove an *actual battery,* though it must be alleged in the declaration; for, upon proof of an assault only, the plaintiff will be entitled to recover."  Again in 2 Ency. Pl. and Pr. 863 it is stated:  "The plaintiff is entitled to recover some damages, though only an assault is proved,

and no special damage is alleged.'' See, also, 3 Reeves, Hist. Eng. Law (Am. ed.) 284, 285.

It seems from these authorities that under the common law the plaintiff in a civil action for damages for an assault and battery could recover for the assault alone included in the particular battery charged. This common-law rule has been incorporated in our statute in criminal cases. §§2147-2149 Burns 1914, Acts 1905 p. 584, §§271-273. In view of the fact that under the law of this State all criminal offenses must be defined by statute, and in view also of the general character of the provisions of §2041 Burns 1914, Acts 1905 p. 584, §170, which provides the form of an indictment, it was probably necessary that §§2147-2149, *supra*, should be enacted in order that such rule should be carried into the criminal law. It does not follow, however, that the absence of such provisions in the civil code indicates any intent on the part of the legislature to abrogate such rule of the common law in civil procedure and we can see nothing in the requirements of the several subdivisions of §343 Burns 1914, §338 R. S. 1881, providing for the contents of a complaint in a civil action inconsistent with the operation of such rule. This section merely requires that the facts constituting the cause of action shall be stated in concise language and in such manner as to enable a person of common understanding to know what is intended, and where more than one cause of action is stated the separate causes of action shall be stated in separate paragraphs. These provisions are sufficiently liberal to allow the plaintiff in a suit for damages charging assault and battery to recover for the assault alone, where the battery charged is charged with such certainty and particularity as to indicate and identify the assault included in it. On this phase of the question the following language of the court in the case of *Brzezinski* v. *Tierney* (1891), 60 Conn. 55, 22 Atl. 486, is particularly applicable: ''If such technicalities are discarded where liberty and life are at stake, surely they

can not prevail in a civil action for damages merely.  *  *  *
The defendant surely can expect no greater favor than that
we should apply to this complaint, and the question arising
under it, the principle applicable under the strict require-
ments for criminal indictments." If, however, it should
be granted that under the general charge of assault and
battery alleged in plaintiff's first paragraph of complaint
she should not be permitted to recover for the assault alone,
still under the averments of the second paragraph evidence
might have been admitted to which each of said instructions
was applicable.

It will be observed that this paragraph of complaint avers
a series of specific acts (which we have italicised), some of
them being charged as assaults and batteries, but all con-
tinuous as part of one and the same tort or trespass on
the person, and it is averred that "by reason of such *wrong-
ful acts*" the appellee suffered great bodily and mental an-
guish, shame, humiliation and injury. The averments in
this paragraph, at least, were sufficient to permit evidence
to which each of the several instructions was applicable.
The following language of the Supreme Court in the case
of *Kline* v. *Kline* (1902), 158 Ind. 602, 603, 605, 69 N. E.
9, 58 L. R. A. 397, is particularly applicable to this phase
of the question under discussion: "Apart from any con-
sideration as to whether there was any showing of a present
ability to commit the threatened violence, so as to give a
remedy for the public wrong, by way of prosecution for
assault, we feel clear that there was such an invasion of
appellee's private right as would authorize a recovery for
such damages as she sustained. Even if we were to grant,
for the sake of the argument, that there was not an assault,
within the meaning of our criminal statute, yet there was
such an assault as clearly subjected the offender to a civil
action at common law.  *  *  *  In this case there was a
wilful and distinct invasion of appellee's right of personal
security by an act of inchoate violence. We do not doubt

that this was actionable. There was a touching of the mind, if not of the body.'' See, also, *Newell* v. *Whitcher* (1880), 53 Vt. 589, 38 Am. Rep. 703; Bishop, Non-Contract Law §§16, 31, 190, 194, 417; *Jacobs* v. *Hoover* (1864), 9 Minn. 204, 211, 212; *Beech* v. *Hancock* (1853), 27 N. H. 223, 229, 59 Am. Dec. 373; *State* v. *Rawles* (1871), 65 N. C. 334, 337. Equally applicable and more nearly fitting the particular facts of this case is the following language" of the court in the case of *Newell* v. *Whitcher, supra,* 591, 592: ''It is claimed that the entry into the plaintiff's private apartments did not support the action of trespass *quare clausum;* but we think that her right to her private sleeping room during the night under the circumstances of this case, was as ample and exclusive against the inmates of the house, as if the entry had been made into her private dwelling house through the outer door. Her right of quiet occupancy and privacy was absolute and exclusive; and the entry by stealth in the night into such apartments without license or justifiable cause, was a trespass; and, if with felonious intent, was a crime. * * * When the acts of the party complained of are of themselves innocent and harmless, and may become wrongful by the *manner* in which they are done, then a man is to be judged by the common and ordinary effect of such acts. But when a married man breaks into the bedroom of a chaste and honest woman at midnight, and proposes to her sexual and criminal commerce with her, the act is wholly wrongful; the aim and purpose is wrongful, and the act if perpetrated is criminal; and the party offending must answer in damages for all actual injuries.''

It is further insisted in effect as against instruction No. 8 that the facts set out therein for its purposes must be treated as all that occurred and that such facts when summed up in an instruction authorized a verdict for appellant because, (1) such facts do not show any overt act on the part of appellant; that mere passiveness, or preparation does not constitute an assault but that there

must be a threat or offer to do physical injury; (2) such facts authorize recovery on the ground of injury following fright while the complaint charges injuries caused by striking and beating which would constitute a fatal variance, and further that under said instruction the fright need not have been occasioned by any act of the defendant. We cannot agree with this contention. While it might be difficult in some instances in cases of this character to determine just where the preparation ended and the assault began we think we are safe in saying that, under the facts of this case, the preparation should be treated as ended when the appellant disrobed himself, and that the assault began when he broke into the privacy of appellee's bedroom at an hour of the night when she might also be expected to be disrobed and in bed. This act, to any chaste woman, and we must in this case assume that appellee was such a woman, would be the beginning of the "touching of the mind" at least, and all additional acts of appellant thereafter were an aggravation of such touching. No intelligent woman could doubt the purposes of a man who would enter her bedroom at the time and in the manner indicated in this instruction; and she would have reasonable ground to believe that his purpose and intention was unlawful, and that he intended to lay hands on her and that he had the present ability to do so.

Instruction No. 3 reads: "A battery is the touching of a person in a rude and insolent manner against the will of the person touched, and a battery always includes an assault. The least touching of another in a rude and insolent manner is a battery, *for the law cannot draw the line between the different degrees of violence* and prohibits the first and lowest state of it." Objection is made to the italicised portion of this instruction, that it "was misleading in that there would be a sharp distinction, *i. e.* line, between the different degrees in determining the

amount of damages." The answer to this objection is that the instruction only attempts to define or indicate what constitutes a battery. There is in it no attempt to indicate the method of arriving at the measure of damages caused by the injury resulting from the battery and, hence the instruction furnishes no ground for the objection urged against it. As a definition of a battery the instruction is correct. Pollock, Torts (6th ed.) 210.

Instruction No. 6, reads: "If you find from the preponderance of the evidence that the defendant, without the invitation or consent of the plaintiff, entered the bed-
6.  room of the plaintiff in the nighttime on May 23, 1906, and after the plaintiff had retired for the night and that defendant was in such a state of undress that he was clothed only in a shirt, and that plaintiff told defendant to leave the room and defendant did not do so, and that defendant then attempted to throw her on the bed, and that plaintiff then leaped through an open window and left the room, then you shall find for the plaintiff." It is urged against this instruction that while it undertakes to state all the facts necessary to a recovery that many of the essential elements of an assault and battery are omitted; that "it does not characterize the acts as rude, insolent or angry, and against the will of appellee", that it "omits the element of unlawfulness and the element of damages suffered." The facts which the instruction required the jury to find supplied ground for inferring the constructive intent which made the wrongful act wilful. *Reynolds* v. *Pierson* (1902), 29 Ind. App. 273, 275, 64 N. E. 484; *Mercer* v. *Corbin* (1889), 117 Ind. 450, 451, 455, 20 N. E. 132, 3 L. R. A. 221, 10 Am. St. 76. And in view of the requirement of the instruction as to what the jury should find as to the manner and character of appellant's entry into appellee's room and that such entry was without her invitation or consent and after she had retired for the night, it was unnecessary that they should be required to further

find that such act was wrongful, or that it was rude, insolent or angry. The other facts required to be found of necessity gave to the act the character and element of rudeness and insolence and hence made it wrongful. *Mercer* v. *Corbin, supra; Kline* v. *Kline, supra; Reynolds* v. *Pierson, supra; Peterson* v. *Haffner* (1877), 59 Ind. 130, 26 Am. Rep. 81. Nor was it necessary for appellee to prove

7. damages before she could recover for such trespass on her person for the law will presume that nominal damages at least result from such a civil wrong. *Lewis* v. *Hoover* (1834), 3 Blackf. 407; *Barlow* v. *Louder* (1880), 35 Ark. 492, 493; *Tatnall* v. *Courtney* (1880), 6 Houst. (Del.) 434, 437; *Crosby* v. *Humphreys* (1894), 59 Minn. 92, 95, 96, 60 N. W. 843; 3 Elliott, Evidence §1703; 1 Ency. Pl. and Pr. 863.

Instruction No. 12 reads: "In case you shall find for the plaintiff on either paragraph of the complaint, it is not necessary that plaintiff shall have shown any pecuni-

8. ary loss in order to recover damages, but in assessing the damages you may consider the physical pain and suffering caused to plaintiff, if any, and also the mental pain and anguish, and the shame and humiliation, if any, which would naturally follow from the assault committed by defendant, in case you find the defendant committed an assault." It is insisted that by this instruction the jury may have been led to believe that it should "award an amount for plaintiff's suffering generally and an additional amount for her mental pain and anguish and still an additional amount for shame and humiliation" and thus violate the rule that will not permit the assessment of double damages. There can be no doubt of the correctness of the rule relied on by appellant, but we are quite sure that the language employed in the instruction was not such as to mislead the jury in the respect mentioned. While it is doubtless true that physical suffering is, in a sense, mental, yet, it is generally understood to mean the suffering or pain

that flows directly from the physical injury; while the mental pain and anguish relate more particularly to the contemplation of the consequences and result of such injury. Humiliation differs from both in that it, unlike the others, is not wholly personal but is a state of mind generally induced from without on account of a consciousness of the injured party (the appellee in this case), that others are aware of the insult and wrong suffered by her. These elements were each and all proper elements of damage. *Wolf* v. *Trinkle* (1885), 103 Ind. 355, 357, 3 N. E. 110; *Kelly* v. *Kelly* (1894), 8 Ind. App. 606, 614, 34 N. E. 1009; *Singer, etc., Mach. Co.* v. *Phipps* (1911), 49 Ind. App. 116, 125, 94 N. E. 793. See Century Dict., definition, "shame" and "humiliation."

We next consider the errors predicated on the ruling on the motion for a *venire de novo,* and the action of the trial court in permitting the affidavits to be filed with appellee's motion for judgment on the verdict. Where a verdict is so defective and uncertain that no judgment can be rendered on it, a motion for a *venire de novo* should be sustained, but the overruling of such a motion will not work a reversal on appeal where, as in this case, the record affirmatively shows that the apparent uncertainty of the verdict was cured and substantial justice done by the judgment rendered. *Waterbury* v. *Miller* (1895), 13 Ind. App. 197, 210, 41 N. E. 383. The record shows that after the verdict was returned and before judgment was rendered thereon, appellee filed a motion for judgment in the sum of $1,500 on the verdict, at the same time filing therewith certain affidavits in support of said motion, being the affidavits of nine of the jurors in said cause, of the clerk of the court who read the verdict when presented, and of two of the attorneys of appellee, present at the reading, to the effect that the jurors intended to return a verdict in favor of appellee for $1,500, that the clerk so read it and all affiants stated that they understood

it to be a verdict for $1,500. Appellant claims that the court committed error in receiving these affidavits; that the verdict could not be impeached by affidavits of the jurors. The general rule is that the affidavits of jurors can not be received to prove misconduct on their part, or any act done by them which would tend to impeach or overthrow their verdict. From soon after the early recognition of the rule stated, down to the present time, however, it has been held that the rule did not affect the power of the court to accept the evidence of the jurors to perfect the verdict, nor to correct any inadvertence or mistake that had occasioned the entry of a verdict which was not in accord with the finding of the jury. *Chicago, etc., R. Co.* v. *McDaniel* (1893), 134 Ind. 166, 32 N. E. 728, 33 N. E. 769; *Capon* v. *Stoughton* (1860), 82 Mass. 364; *Hamburg, etc., Ins. Co.* v. *Pelzer Mfg. Co.* (1896), 76 Fed. 479, 482, 22 C. C. A. 283; *Dalrymple* v. *Williams* (1875), 63 N. Y. 361, 364, 20 Am. Rep. 544; *Prussel* v. *Knowles* (1893), 4 How. (Miss.) 90; *Johnson* v. *Oakes* (188), 80 Ga. 722, 6 S. E. 274; *Cogan* v. *Ebden* (1757), 1 Burrows 383; *Schwamb Lumber Co.* v. *Schaar* (1900), 94 Ill. App. 544, 549, 553; *Peters* v. *Fogarty* (1893), 55 N. J. L. 386, 26 Atl. 855; *Dayton* v. *Church* (1879), 7 Abb. New Cas. (N. Y.) 367; *Wirt* v. *Reid* (1910), 138 App. Div. 760, 123 N. Y. Supp. 706; *Hodgkins* v. *Mead* (1890), 119 N. Y. 166, 23 N. E. 559. Appellant does not contradict the statements as made in the affidavits and it is quite apparent that the omission from the verdict of the written word "hundred" was a mere oversight or clerical mistake. We think the law as applicable to this case is well stated in the case of *Capon* v. *Stoughton, supra,* where the court says: "The evidence of the jurors is offered only to show a mistake, in the nature of a clerical error, which happened after the deliberations of the jury had ceased, and they had actually agreed upon their verdict. The error consisted, not in making up their verdict on wrong principles or on a mistake of facts, but in an omission to state cor-

rectly in writing the verdict to which they had, by a due and regular course of proceeding, honestly and fairly arrived. * * * No considerations of public policy require that the uncontradicted testimony of jurors to establish an error of this nature should be excluded. Its admission does not in any degree infringe on the sanctity with which the law surrounds the deliberations of jurors, or expose their verdicts to be set aside through improper influences, or upon grounds which might prove dangerous to the purity and steadiness of the administration of public justice. On the contrary, it is a case of manifest mistake, of a merely formal and clerical character, which the court ought to interfere to correct, in order to prevent the rights of the parties from being sacrificed by a blind adherence to a rule of evidence, in itself highly salutary and reasonable, but which upon principle has no application to the present case." The foregoing authorities seem to make it clear that the trial court committed no error in receiving the affidavits filed to explain and support the verdict actually intended to be returned in this case.

The verdict of the jury should have a reasonable construction and must not be avoided except from necessity, *Polson* v. *State* (1894), 137 Ind. 519, 37 N. E. 907.

12. While it may be true that the verdict returned in this case and entered on the record was susceptible to a different construction, from that finally given it, and that, for this reason, the record, as it existed at the time the motion for a *venire de novo* was made, was such as to authorize the sustaining of such motion, yet we are of the opinion that the affidavits afterward filed, setting out the verdict as read in open court when it was returned and filed, and explaining the omission in the written verdict returned, cured its imperfections and rendered harmless any apparent error in overruling the motion, and that, as the record comes to us, no substantial right of appellant is shown to have been violated by such ruling and hence no

reversible error resulted therefrom.  §§700, 407 Burns 1914, §§658, 398 R. S. 1881; *Swing* v. *Wellington* (1909), 44 Ind. App. 455, 464; 89 N. E. 514; *March* v. *March* (1912), 50 Ind. App. 293, 98 N. E. 324; *Griffith* v. *Felts* (1913), 52 Ind. App. 268, 99 N. E. 432.  A motion to correct the verdict returned in the respect indicated supported by the affidavits before the motion for *venire de novo* was ruled on, would probably have been the more consistent and appropriate practice, but the same end, viz., the correction of the verdict so that a judgment might be made to conform thereto, would have been reached, and the fact that such affidavits were filed after the motion for a *venire de novo* had been ruled on rather than before, in no way affected the substantial rights of appellant.

Finding no available error in the record, the judgment below is affirmed.

NOTE.—Reported in 104 N. E. 116.  For a discussion of the affidavits of jurors as evidence that the verdict returned or entered differed from the verdict actually found, see 3 Ann. Cas. 401; Ann. Cas. 1912 A 1205.  See, also, under (1) 3 Cyc. 303; (2, 5, 6, 7, 8, 9) 33 Cyc. 1525; (3) 3 Cyc. 1088; (4) 33 Cyc. 1431; (10) 3 Cyc. 383; (11) 38 Cyc. 1902; (12) 3 Cyc. 383.